KETRING *v.* STATE OF INDIANA.

[No. 26,476. Filed March 5, 1936.]

*Sheehan & Lyddick,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *Ralph E. Hanna,* Assistant Attorney-General, for appellee.

HUGHES, J.—An affidavit in two counts, the first charging voluntary manslaughter, and the second, involuntary manslaughter, was filed against the appellant on July 18, 1934. The appellant, on the same day the affidavit was filed, plead guilty to the first count of the affidavit and was sentenced to the Indiana State Prison for a period of not less than two (2) nor more than twenty-one years. At the time the appellant entered his plea of guilty he had not consulted with an attorney nor anyone else other than the prosecuting attorney and the sheriff of the county. On the 23rd day of July, 1934, the appellant, by his attorney, moved to set aside and vacate the submission and judgment and permit him to enter a plea of not guilty. The motion was overruled. The appellant then moved to modify the judgment and sentence to read involuntary manslaughter with a sentence of from one (1) to ten (10) years. This motion was also overruled. The appellant then

moved the court to strike out and vacate the whole judgment and sentence as being contrary to law, which motion was overruled.

The appellant states eight propositions in his assignment of errors, but we will only consider the second, which is as follows:

"The court erred in overruling the appellant's motion to vacate and set aside the judgment and to permit the appellant to withdraw the plea of guilty."

The special bill of exceptions shows that the motion and request to withdraw the plea of guilty and to vacate and set aside the judgment and sentence was made orally and the State consented to the oral motion and waived that it be reduced to writing and sworn to. It is also shown that the court acted upon said oral motion without it being reduced to writing.

The facts as set out in the special bill of exceptions are in substance as follows:

"That the defendant (appellant) was not accustomed to legal procedure and did not know the full force and effect of his plea of guilty; that he understood he was pleading guilty to involuntary manslaughter and did not know the law applicable to the facts in the case; that the facts in the case did not substantiate the first count of the affidavit for voluntary manslaughter; that the commission of the offense charged was merely with blow of the fist and that death resulted from a fall whereby the decedent suffered a fractured skull or concussion of the brain causing death; that the defendant had no legal advice and no opportunity to talk with friends or relatives before he entered his plea of guilty; that at the time he was in a dazed and subnormal condition of the mind due to the fact of the death of his victim from an act he did not contemplate; that the only persons he talked with, prior to the time he entered his plea of guilty was the Sheriff, Prosecuting Attorney and the Judge; that he had no counsel and did not understand the extent of the offense committed nor the law applicable thereto."

While the evidence is not in the record it fairly appears from the briefs in the case and the record that on July 15, 1934, the appellant struck the decedent with his fist, and the decedent fell, striking the back of his head on the sidewalk, and died on July 16, 1934, as a result of a fractured skull. It appears that the appellant had some sort of an altercation with the decedent and two other men, the exact nature of which is not shown.

It has been repeatedly stated that the distinction between voluntary and involuntary manslaughter is that in the former there is a purpose or intention to take life, but in the latter the killing is unintentional, but is done in the commission of some unlawful act. *Luck* v. *State* (1884), 96 Ind. 16; Ewbank's Criminal Law (2nd Ed.), §899. An intention to kill is an essential element of voluntary manslaughter. *Norton* v. *State* (1884), 98 Ind. 347; *Adams* v. *State* (1879), 65 Ind. 565. There is a great difference in the penalty imposed between voluntary and involuntary manslaughter. As to whether or not one who strikes another with his fist has the intention to kill is always a question of fact. As a general proposition, however, such facts do not show an intention to kill in most cases. In the instant case count one charges that appellant struck the decedent with his fist causing him to fall on the sidewalk and thereby receiving a fractured skull from which he died.

The appellant, within a few hours after the affidavit was filed against him, without consulting with an attorney or friends, pleaded guilty to voluntary manslaughter, when, as he states in his motion, he thought he was pleading guilty to involuntary manslaughter. He further stated in his motion that the thought of having caused the death of the decedent caused his mind to be dazed and in a subnormal condition and that he was in this condition when he entered his plea of guilty; that

he did not fully realize the charge and facts placed against him and the law applicable thereto. And for all these reasons he asked permission of the court to withdraw his plea of guilty so that he might enter a plea of not guilty and have a trial as to his guilt or innocence.

A plea of guilty should be entirely voluntary and made by one who at the time fully understands the consequences thereof and this is especially true where one is charged with a serious crime. In the instant case the plea, judgment, and sentence took place within a few hours after the appellant was charged with the offense, and when he had no counsel to represent him. The State was represented by the Prosecuting Attorney and the Sheriff who, doubtless, were anxious that the proceedings move swiftly.

In the case of *Rhodes* v. *State* (1926), 199 Ind. 183, 156 N. E. 389, it was said (p. 194) :

> "This court has expressed disapproval of trial courts receiving pleas of guilty from defendants charged with serious crimes, who are not represented by counsel, until 'after reasonable inquiry into the facts to discover whether a plea of guilty is entered freely and understandingly.' "

We recognize the general rule that whether one duly charged with a crime may withdraw a plea of guilty entered by him is a question committed to the sound judicial discretion that an impartial judge should exercise, and where the record discloses no ground for the application to withdraw the plea of guilty, or where it appears that the court's ruling was based upon conflicting evidence which it was compelled to hear to reach a conclusion then this court will not disturb the ruling of the court. In the instant case the record does not disclose any counter-affidavits to the motion of the appellant and there was no evidence other than the facts stated in the affidavit, and there is no contradiction of the facts by the State.

It is the policy of the law to give everyone charged with a crime full opportunity to assert his innocence in a court of justice. In the instant case no harm could have resulted to society or to the State by permitting a withdrawal by the appellant of his plea of guilty and to allow him to plead not guilty and to make his defense. If he was, in fact, guilty the State would have the right to establish the fact. If innocent he should not have been imprisoned for a long period of time for voluntary manslaughter. And from the facts as found in the record, we seriously question whether or not a charge of voluntary manslaughter could be sustained.

Under the facts as found in the record, we are of the opinion that the application by appellant to withdraw his plea of guilty should have been sustained by the lower court.

Judgment reversed with directions to the lower court to permit the appellant to withdraw his plea of guilty.

Roll, C. J., dissents.