**Gerry BUTLER, Appellant (Petitioner Below),**

v.

**STATE of Indiana, Appellee (Respondent Below).**

No. 45S03–9502–PC–247.

Supreme Court of Indiana.

Nov. 28, 1995.

Charles A. Asher, South Bend, for appellant.

Pamela Carter, Attorney General, Julie Zandstra Frazee, Deputy Attorney General, Indianapolis, for appellee.

## ON PETITION TO TRANSFER

SHEPARD, Chief Justice.

The Court of Appeals ordered post-conviction relief for appellant Gerry Butler. It held that if a defendant and the prosecutor affirm that the facts support a plea, a trial court abuses its discretion if it accepts the plea without proof of all the relevant facts. We grant transfer.

### I. The Prosecution of Butler's Drunk Driving

In 1987, during his third D.U.I., Butler crashed his vehicle into another car. As a result of Butler's acts, Juanita McClendon was killed, her eleven-year-old son was left paralyzed, her twelve-year-old daughter's leg was broken in three places, her sister's face was seriously scarred and her arm broken, and her five-year-old nephew broke both legs, both knees and received a head injury resulting in mental retardation.

The State charged Butler with a host of crimes: operating a motor vehicle while intoxicated causing death, a class C felony;[1] reckless homicide, a class C felony;[2] four counts of criminal recklessness causing serious bodily injury, class D felonies;[3] four counts of operating a motor vehicle while intoxicated causing serious bodily injury, class D felonies;[4] driving while suspended, a class A misdemeanor;[5] and one count alleging Butler was a habitual substance offender, a class C felony enhancement.[6]

Butler's lawyer negotiated a plea bargain under which Butler pled guilty to operating a vehicle while intoxicated resulting in death or serious bodily injury, and to being a habitual substance offender. In exchange, the State dismissed the remaining six charges. The court sentenced Butler to concurrent sentences of eight years for the driving while intoxicated charges and added eight years for the habitual substance count.

Three years later Butler filed a petition for post-conviction relief, claiming he was not a habitual substance offender. The Indiana Code requires two prior substance convictions as class A misdemeanors or as felonies; Butler contended one of his priors was a class C misdemeanor.[7] Butler said he did not know this when he pled guilty to being a habitual substance offender. He also alleged that he had entered this fallacious plea because his counsel was ineffective.

The post-conviction judge undertook to determine the nature of the challenged prior conviction. During the hearing on Butler's petition, the post-conviction court examined the text of the chronological case summary and the citation for Butler's second offense.[8] The CCS stated Butler was charged with " 'DR UNDER INFLUENCE (REFUSAL)' and 'NO PLATES.' " The citation indicated that Butler was " 'driving while intox., contrary to the form of State Statute, I.C. 9–11–2–1,' " (R. 150.) This citation referred to a statute defining a class C misdemeanor, but

1. Ind.Code Ann. § 9–11–2–5 (West Supp.1987). Article 11 of Title 9, Operating a Vehicle While Intoxicated, was amended and recodified at Ind. Code § 9–30 by P.L. 2–1991, Sec. 18, 1991 Ind. Acts 632. Ind.Code § 9–11–2–5 is recodified at § 9–30–5–5.

2. Ind.Code Ann. § 35–42–1–5 (West 1986).

3. Ind.Code Ann. § 35–42–2–2 (West 1986).

4. Ind.Code Ann. § 9–11–2–4 (West Supp.1987); recodified at § 9–30–5–4. See note 1, supra.

5. Ind.Code Ann. § 9–1–4–52 (West 1987); recodified at § 9–24–18–5 by P.L. 2–1991, Sec. 12, 1991 Ind.Acts 487.

6. Ind.Code Ann. § 35–50–2–10 (West 1986).

7. Ind.Code Ann. § 35–50–2–10(b) (West 1986) requires a person to have "two (2) prior unrelated substance offense convictions" to be convicted as an habitual substance offender. Subsection (a)(2) defines an unrelated substance offense as "a Class A misdemeanor or a felony in which the possession, use, abuse, delivery, transportation, or manufacture of alcohol or drugs is a material element of the crime." Ind.Code Ann. § 35–50–2–10(a)(2) (West 1986).

8. Butler correctly noted in his Brief in Opposition to the State's Petition to Transfer that a uniform traffic ticket or citation is the functional equivalent of an information or indictment. Watt v. State (1968), 249 Ind. 674, 234 N.E.2d 471.

the post-conviction court found as a fact that the text of the ticket referred to the offense of Operating a Vehicle While Intoxicated, a class A misdemeanor. Ind Code Ann. § 9–11–2–2 (West Supp.1987).

In effect, the court inferred that the statutory citation was a scrivener's error. The court buttressed this conclusion by noting Butler's own testimony revealed he was not misled about the nature of the charge, for he admitted to the sentencing court that he had "two prior D.U.I.s". (R. 61.) Finally, the court concluded the offense was likely a class A misdemeanor because there was no evidence Butler submitted to a blood-alcohol content test. The court noted that without this test Butler could not have been convicted of driving with the .10 percent blood-alcohol content required for conviction of a class C misdemeanor under § 9–11–2–1.[9]

The post-conviction court also denied Butler's claim of ineffective assistance of counsel. It found that even if counsel failed to suggest that Butler might collaterally challenge the status of the second offense, there was "no evidence to suggest that this would have made a difference to [Butler's] decision to plead guilty." (R. 153.)

Butler appealed, alleging the post-conviction court erred by finding he had committed the required predicate offenses. He further claimed he had been denied effective assistance of counsel and that the post-conviction court had erred by considering the testimony of a deputy prosecutor on an issue of law.

The Court of Appeals reframed Butler's first issue, asking instead whether his guilty plea was supported by a sufficient factual basis. The court held there was no factual basis to accept the plea because Butler's testimony was the only evidence about the class of his convictions. It held that this evidence alone could not constitute a sufficient factual basis. *Butler v. State* (1994), Ind.App., 638 N.E.2d 826. Reversing on this

ground, it did not address Butler's second and third claims of error.

We grant the State's petition to transfer to consider the following issues:

1. Whether the post-conviction court erred when it found Butler had committed two prior class A misdemeanors;

2. Whether Butler received effective assistance of counsel; and,

3. Whether the post-conviction court erred by admitting and relying on opinion testimony about a legal issue.

■ At the outset, we note that a petitioner who loses in a post-conviction proceeding stands in the shoes of one appealing from a negative judgment. On appeal, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the trial court. *Lowe v. State* (1983), Ind., 455 N.E.2d 1126. On appeal, we examine only the probative evidence which supports the post-conviction court's judgment, along with any reasonable inferences from that evidence. *Wickliffe v. State* (1988), Ind., 523 N.E.2d 1385. With this standard in mind, we turn first to the nature of Butler's prior conviction.

## II. Butler's Previous Offenses

The Court of Appeals characterized Butler's claim concerning the class of his prior conviction as a question of factual basis. We begin by explaining why it is more than that.

■ Because a guilty plea constitutes a waiver of constitutional rights, a trial court has a duty to evaluate the validity of every plea before accepting it. *Stowers v. State* (1977), 266 Ind. 403, 363 N.E.2d 978. Indiana Code § 35–35–1–3 outlines the parameters of this obligation when it requires courts to ascertain the voluntariness of the plea and whether there is a factual basis for it. Ind.Code Ann. § 35–35–1–3 (West 1986).[10] These requirements parallel those

9. Ind.Code Ann. § 9–11–2–1(b) (West Supp. 1987), recodified at § 9–30–5–1, *see* note 1, *supra.*

10. Section 35–35–1–3 provides in pertinent part:
(a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the

crime without first determining that the plea is voluntary. The court shall determine whether any promises, force, or threats were used to obtain the plea.
(b) The court shall not enter judgement upon a plea of guilty or guilty but mentally ill at the

utilized in the federal courts,[11] where they rest on Rule 11 of the Federal Rules of Criminal Procedure rather than on any constitutional basis.[12] *See McCarthy v. United States,* 394 U.S. 459, 467, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

Since the 1930's, Indiana courts have recognized the need to find that a guilty plea is voluntary. *Ketring v. State* (1936), 209 Ind. 618, 200 N.E. 212. By contrast, factual basis emerged as a requirement only more recently. *See Brimhall v. State* (1972), 258 Ind. 153, 279 N.E.2d 557. Our General Assembly created a factual basis requirement in 1971 by adopting Section 35–4.1–1–4 and recodifying it in 1973 at Section 35–35–1–3. Some judges made such inquiries before the General Assembly required it. *See Turner v. State* (1991), Ind., 580 N.E.2d 665, 669 (DeBruler, J., dissenting).

■ The factual basis requirement primarily ensures that when a plea is accepted there is sufficient evidence that a court can conclude that the defendant could have been convicted had he stood trial. *See* III *American Bar Association Standards for Criminal Justice* § 14–1.6, Commentary § 14–1.6(a) (1986). In short, this standard ensures that a person who pleads guilty truly is guilty.[13] This is particularly important where a defendant pleads guilty with "an understanding of the nature of the charge, without realizing that his conduct did not actually fall within the charge." 2 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure,* § 20.4(f), n.

118 (quoting Fed.R.Crim.P. 11, Advisory Committee Note) (1991); *see also South Dakota v. Lashwood,* 384 N.W.2d 319 (S.D.1986) (observing that purpose is to protect one who might not realize his conduct does not fall within scope of charge). Moreover,

> inquiry into the factual basis of the plea provides the court with a better assessment of the defendant's competency and willingness to plead guilty ..., increases the visibility of charge reduction practices, provides a more adequate record and thus minimizes the likelihood of the plea being successfully challenged later, and aids correctional agencies in the performance of their functions.

2 LaFave & Israel, § 20.4(f), n. 120 (citing ABA Standards Relating to Pleas of Guilty 33 (Approved Draft, 1968)); *see also* John L. Barkai, *Accuracy Inquiries for all Felony and Misdemeanor Pleas: Voluntary Pleas But Innocent Defendants?,* 126 U.Pa.L.Rev. 88, 95–100 (1977).

■ Despite the wealth of writing on the benefits of the factual basis requirement, court decisions and statutes specifying the "precise quantum of evidence" constituting "factual basis" are non-existent. 2 LaFave & Israel, § 20.4(f)(1) (citing, for comparison, ALI Model Code of Pre–Arraignment Procedure § 350.4(3) (1975)) (requiring courts to find "reasonable cause exists" before accepting a plea). This is because a finding of factual basis is a subjective determination that permits a court wide discretion—discre-

time of the crime unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea.
Ind.Code Ann. § 35–35–1–3 (West 1986). Moreover, Section 35–35–1–2 also instructs the court to perform certain acts which ensure the protection of the defendant's constitutional rights. The court must ensure the defendant understands the charge against him and the ramifications of his guilty plea and comprehends the potential punishments which could result from his plea. Ind. Code Ann. § 35–35–1–2 (West 1986).

**11.** FED.R.CRIM.P. 11(f).

**12.** The U.S. Supreme Court traditionally focuses on "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). As a result, some

courts have declined to require a finding of factual basis. *See Roddy v. Black,* 516 F.2d 1380, 1385 (6th Cir.1975) (Constitution does not require judge to inquire into factual basis of guilty plea). Other courts and legislatures have followed the path pursued in this state, adopting rules of procedure and statutes which require factual basis. *See, e.g.,* CAL.PENAL CODE § 1192.5 (West Supp.1994); COLO.REV.STAT. § 16–7–207(2)(f) (Bradford Supp.1994) COLO. RULES OF CRIM.PROC. 11(b)(6) (Bradford Supp.1994); ILL.SUP.CT.R. 402 (West Supp. 1994); MICH.COMP.LAWS 768.35 (West Supp. 1995), *see* n. 186.

**13.** As the trial judge explained to a defendant in one recent case we saw on appeal, "I have to be sure the police didn't just drag you in off the street."

tion that is essential due to the varying degrees and kinds of inquiries required by different circumstances. *See Snyder v. State* (1986), Ind., 500 N.E.2d 154, 157.

Obviously, a court need not find evidence proving guilt beyond a reasonable doubt to conclude that a factual basis exists. *See, e.g., Broadie v. Wisconsin,* 68 Wis.2d 420, 228 N.W.2d 687 (1975); *see also Arizona v. Hamilton,* 142 Ariz. 91, 688 P.2d 983 (1984) (factual basis may be established by strong evidence of guilt, but need not be shown beyond reasonable doubt). Such a high standard would transform the guilty plea hearing into a veritable bench trial, the very process that one pleading guilty seeks to avoid.

Instead, this Court and others have held that a factual basis exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty.[14] Relatively minimal evidence has sometimes been held adequate. *See, e.g., Lowe v. State* (1983), Ind., 455 N.E.2d 1126, 1129 (defendant's admission of guilt after prosecutor read all allegations adequately established factual basis).[15]

■ Trial court determinations of adequate factual basis, like other parts of the plea process, arrive here on appeal with a presumption of correctness. *See Centers v. State* (1986), Ind., 501 N.E.2d 415. We typically review claims of error about pleas under an abuse of discretion standard. For example, when a trial court denies a defendant's request to withdraw a guilty plea before sentencing, the post-conviction court reviews the trial court's acceptance of the plea for an abuse of discretion. *See Trueblood v. State* (1992), Ind., 587 N.E.2d 105, *cert. denied,* 506 U.S. 897, 113 S.Ct. 278, 121 L.Ed.2d 205 (reviewing request to withdraw of plea before sentencing); Ind.Code Ann. § 35–35–1–4(b) (decision on motion to withdraw plea before sentencing reviewable only for abuse of discretion). This standard is also appropriate where the defendant asks that his plea be set aside through a motion for post-conviction relief on grounds that the factual basis was inadequate.

■ In Butler's case, deciding whether the trial court abused its discretion in accepting the plea necessarily requires examination of the inquiry undertaken at the time and the facts established as a result of it. Butler told the trial judge the allegations of the information were accurate. Furthermore, the hearing before the post-conviction judge demonstrates that a more complete production of evidence about Butler's prior conviction

---

**14.** Evidence used to illustrate factual basis may come from a variety of sources and is not limited to sworn testimony. *Bates v. State* (1988), Ind., 517 N.E.2d 379; *Gibson v. State* (1986), Ind., 490 N.E.2d 297. The court may base its decision on its inquiry alone, so long as the questions presented are sufficiently detailed to show guilt. Questions requiring only a yes or no answer may be found insufficient. *See, e.g., State v. Durham,* 108 Ariz. 327, 498 P.2d 149 (1972); Barkai, 126 U.Pa.L.Rev. at 135–36. The court may also find factual basis from the State's detailed recitation of evidence on the elements of the crime and the defendant's admission thereto. *See, e.g., Coker v. State* (1986), Ind., 499 N.E.2d 1135. Moreover, it may be shown through the testimony of witnesses who have personal knowledge of the defendant's conduct or admissions, III *American Bar Association Standards for Criminal Justice* § 14–1.6, Commentary § 14–1.6(b) (1986), or the defendant's own sworn testimony, *Stockey v. State* (1987), Ind., 508 N.E.2d 793. In practice, factual basis is commonly established through a combination of such evidence.

**15.** *Compare Gibson v. State* (1986), Ind., 490 N.E.2d 297 (finding factual basis from defen-

dant's repeated admissions, testimony of codefendant, and prosecutor's recitation of facts, despite defendant's claim he could not remember details of crime); *Stott v. State* (1985), Ind., 486 N.E.2d 995 (defendant's admissions may create basis even when varying slightly from theory proffered by State); *Neeley v. State* (1983), Ind., 457 N.E.2d 532 (after court read charging information, defendant's statements he understood charge and that plea was admission established factual basis); *Lowe v. State* (1983), Ind., 455 N.E.2d 1126 (defendant's admission of guilt after prosecutor read all allegations sufficient to show factual basis), *with Thacker v. State* (1970), 254 Ind. 665, 262 N.E.2d 189 (no factual basis where transcript showed no evidence of defendant's guilt or evidence submitted by State); *United States v. Bigman,* 906 F.2d 392 (9th Cir.1990) (adequate factual basis not shown where trial court failed to elicit, on record, defendant's understanding of intent element of crime to which he pled); *Montgomery v. United States,* 853 F.2d 83 (7th Cir.1988) (no factual basis where conspiracy was element of drug charge and evidence showed only plans to sell drugs to unknown purchasers).

would have produced information that pointed in both directions. On this record, we cannot say that all the evidence pointed unmistakably to a conclusion opposite to that reached by the post-conviction court, namely, that the guilty plea judge did not commit an abuse of discretion in accepting the plea.

The real question here is whether the plea was contrary to law. This is the same question we recently addressed in *Weatherford v. State* (1993), Ind., 619 N.E.2d 915, involving a petition for post-conviction relief aimed at a habitual offender finding. Denying the petition, we explained that a petitioner

> may not prevail simply by putting the State to its proof as though the case were being tried or appealed in the first instance. Instead, [he] must demonstrate that he was not an habitual offender under the laws of the state.

*Weatherford,* 619 N.E.2d at 917–18.

We will not retry this case on appeal. To succeed, Butler must prove plainly that he is not an habitual offender—that he did not commit the predicate offenses required by § 35–50–2–10. He has not done so.

When the plea was taken, the State recited the evidence it would produce at trial, including "the official court record which would show that the defendant was convicted of D.U.I., *Class A misdemeanor* on June 19th, '86 for offense committed on May 22,- '86 ..." and "evidence to show second D.U.I., *Class A misdemeanor* February 16,- '87, offense occurred July 19th, '86 ... which qualifies [Butler] as a habitual offender." (R. 17 (emphasis added).) After the prosecutor related this evidence, Butler recounted how he drank alcohol most of the day of the accident and then drove into Juanita McClendon's car. He pled guilty to having "two prior unrelated driving while intoxicated offenses and told the court he did in fact have two prior 'D.U.I.'s.'" (R. 73–77.)

The post-conviction court appropriately looked beyond the information presented to the sentencing court because Butler alleged error based on information the sentencing court did not know at the time it accepted his plea. The post-conviction court rejected Butler's claim, basing its decision on the text of the citation, Butler's testimony, and statutory elements of the offenses.

The post-conviction court found that Butler's 1987 predicate offense was a class A misdemeanor. We cannot say that the evidence as a whole led unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

### III. Ineffective Assistance of Counsel

Butler claims he did not receive effective assistance of counsel because his lawyer failed to investigate or advise him of the nature of his second conviction. He contends that had his counsel advised him of the possibility his second offense was not the class A misdemeanor or greater offense required by § 35–50–2–10, he would not have pled guilty to the habitual charge.

We evaluate Sixth Amendment claims of ineffective assistance of counsel according to the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant receives ineffective assistance where the facts reveal "both that counsel's performance fell below an objective standard of reasonableness and that said deficient performance so prejudiced defendant as to deprive him of a fair trial." *Bellmore v. State* (1992), Ind., 602 N.E.2d 111, 123 (citing *Strickland,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064).

We judge whether counsel's assistance was reasonable by looking to the surrounding facts at the time of counsel's conduct, *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2065–66, to determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance," *Lowery v. State* (1994), Ind., 640 N.E.2d 1031, 1041. The defendant bears the heavy burden of proving counsel's "representation fell below an objective standard of reasonableness," a standard weighted with the presumption that counsel's conduct was competent. *Strickland,* 466 U.S. at 687, 689, 104 S.Ct. at 2064, 2065. We scrutinize counsel's performance with a high degree of deference, careful to avoid "distortions of hindsight." *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763.

A petitioner who demonstrates substandard performance by his lawyer must

further show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694, 104 S.Ct. at 2068. In cases concluded by plea of guilty, a defendant must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). This showing is a variation on the general rule that effective assistance is determined according to the whole of a lawyer's performance, and not just on what Justice DeBruler has called "the strategy and performance at issue." *Mott v. State* (1989), Ind., 547 N.E.2d 261, 263.

Employing the *Strickland* analysis, the post-conviction court found that the performance of Butler's counsel was reasonable and that there was no evidence that Butler would have changed his plea had he known the classification of his second conviction was open to doubt. While reasonable counsel might well have examined the predicate offenses more carefully, the post-conviction court is certainly correct that the eventual outcome would likely have been the same. Had Butler not entered into the plea agreement, he would have faced imprisonment of up to twenty-nine years for the class C felony of reckless homicide, class D felonies of criminal recklessness, misdemeanor driving while suspended offense and the habitual offender enhancement. Fortunately for Butler, his lawyer negotiated a plea which produced a sentence of just sixteen years. The post-conviction court found this constituted effective assistance. The evidence certainly does not point solely in the opposite direction.

### IV. Admitting Testimony on an Issue of Law

Butler alleges finally that the post-conviction court erroneously received opinion testimony from Mark Kopinski, a deputy prosecutor for St. Joseph County. Butler claims Kopinski's testimony about the class A status of his second offense was improper because it pertained to an issue of law.

Admitting opinion testimony on an issue of law is improper. *See Marks v. Gaskill* (1991), Ind., 563 N.E.2d 1284 (admission of officer's testimony that one was "at fault" was error); Ind.Evid.Rule 704(b). When prejudice does not result, however, the error is harmless. *Daniel v. State* (1991), Ind., 582 N.E.2d 364. There is no error, of course, where the testimony refers only to issues of fact.

Here, the post-conviction court considered a wide range of evidence to determine the status of Butler's offense. It looked to the citations themselves, the relevant statutes, Butler's testimony (and more) to discover the correct classification. The court did question Kopinski directly on the procedures involved. The court's findings of fact and conclusions of law reveal that Kopinski's testimony was informative about the procedures followed by St. Joseph County courts and about the meaning of handwritten notes in the chronological case summary. This testimony was entirely factual.

The post-conviction court did not rely in any substantial way on Kopinski's testimony, focusing instead on the text of Butler's citation for the offense.[16] We cannot conclude that the post-conviction court's handling of this evidence was erroneous.

### V. Conclusion

We grant transfer and affirm the decision of the post-conviction court in all respects.

DICKSON, SULLIVAN and SELBY, JJ., concur.

DeBRULER, J., dissents with separate opinion.

---

16. While Kopinski did testify that, in his opinion, Butler's second offense was a class A misdemeanor, the post-conviction court did not reference this conclusion. Even if this opinion is one of law, we do not consider its admission reversible error. The court did not explicitly depend on it and did not really rely on it when reaching the ultimate conclusion that the offense was a class A misdemeanor. While the court did mention the lack of a blood-alcohol content test in its findings, a point made by Kopinski, the court could have discovered the need for this test just as easily by examining the language of § 9–11–2–1(a).

**DeBRULER, Justice, dissenting.**

Appellant introduced the written record of his prosecution in St. Joseph Criminal Cause Number 71D01–4250 which shows that he was charged with a "driving while Intox" offense under "I.C. 9–11–2–1." Indiana Code Section 9–11–2–1 (now 9–30–5–1) is a substantive criminal statute defining only a class C misdemeanor. The charge was not amended and the plea was to that charge. The court imposed a sixty day sentence, the maximum sentence for a class C misdemeanor conviction, and suspended fifty days. In my view, the specific citation and the consistent sentence loom large within the evidence before the trial court on the question of whether the conviction should be classified as a C or A misdemeanor, and compel the conclusion that the conviction was indeed for a class C misdemeanor. I would therefore order post-conviction relief as did the Court of Appeals.