**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 21 2014, 9:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF:<br>TLC, A CHILD ALLEGED TO BE A<br>DELINQUENT CHILD,<br><br>    Appellant-Respondent,<br><br>       vs.<br><br>STATE OF INDIANA,<br><br>    Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)    No.  60A01-1308-JV-377<br>)<br>)<br>)<br>) |

APPEAL FROM THE OWEN CIRCUIT COURT
The Honorable Lori Thatcher Quillen, Judge
Cause Nos. 60C01-1207-JD-114 and 60C01-1307-JD-80

**February 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-respondent TLC admitted to committing the offense of what would be Resisting Law Enforcement,[1] a class A misdemeanor, if committed by an adult, when the evidence showed that he continued to run from the police after the officer identified himself by visible or audible means and visibly or audibly ordered TLC to stop. TLC was also adjudicated a delinquent for having committed what would have been the offense of Battery,[2] a class B misdemeanor, had it been committed by an adult, when he hit his mother and placed her in a headlock. The juvenile court awarded wardship of TLC "to the Indiana Department of Correction (DOC) for housing in any correctional facility for children." Appellant's App. p. 7.

We conclude that the juvenile court's commitment of TLC to the DOC was proper. We also disagree with TLC's contentions that the evidence was insufficient to support the adjudications for battery and resisting law enforcement.

FACTS

On June 23, 2012, at approximately 1:30 a.m., sixteen-year-old TLC was at a Circle K with a friend. TLC knew that he was not allowed out after curfew. At some point, a police officer encountered TLC's friend. TLC left the Circle K and attempted to hide from the police. After seeing one police officer driving around in the area, TLC ran to "get away from" the police. Tr. p. 65. TLC later admitted that he had no reason to

---

[1] This offense was codified as Indiana Code section 35-44-3-3 when TLC committed the offense. It has since been recodified at Indiana Code section 35-44.1-3-1(a)(3).

[2] Ind. Code § 35-42-2-1(a).

contest the police officer's claim that the officer had ordered him to stop before TLC decided to keep running.

After TLC was arrested, the State filed a delinquency petition against him, alleging that TLC did "knowingly flee from [Officer] Dave Risk, a law enforcement officer, after said officer identified himself by visible or audible means and visibly or audibly ordered [TLC] to stop." Appellant's App. p. 24. Following an initial hearing, the juvenile court ordered TLC to stay at his residence, provided that he would comply with a 9:00 p.m. curfew. The juvenile court also put TLC's family in contact with juvenile probation officer Jacob Woodruff.

On September 6, 2012, Woodruff was informed by Deputy Russell Glenn that, according to school officials, TLC was in possession of tobacco. When Deputy Glenn attempted to search TLC for the substance, TLC called Deputy Glenn names and was uncooperative. Woodruff testified that school discipline was an "ongoing" issue for TLC, who had been kicked off of a school bus and had been sent to the principal's office regarding other behavioral matters. Tr. p. 21. Deputy Glenn did not believe it was in either TLC's best interests or the school's interests for TLC to remain at school. As a result, TLC was detained and placed at the Southwest Youth Village (Southwest) in Vincennes on September 6, 2012.

Thereafter, it was decided that TLC could leave the facility and stay at home on electronic monitoring. TLC was also ordered to undergo counseling. TLC was

eventually detained again at Southwest after he violated the electronic monitoring rules, refused to return home with his parents, and created disciplinary problems at school.

At the evidentiary hearing on October 2, 2012, TLC admitted to having committed what would have been resisting law enforcement had it been committed by an adult. As a result, the juvenile court entered a judgment of delinquency. The State informed the juvenile court that TLC had been behaving poorly at Southwest and had threatened to attack staff members.

It was determined that TLC needed structured discipline and individual therapy. TLC also had issues with anxiety and depression, ADHD, and various family conflicts. Woodruff recommended that TLC be placed in a more secure facility in light of his threatening behavior. As a result, the juvenile court ordered that TLC be placed in Valle Vista, and that the length of the stay would be indeterminate and based on TLC's progress. The juvenile court also ordered TLC to undergo therapy.

At a hearing on December 11, 2012, the Valle Vista staff recommended that TLC's mother undergo a mental health evaluation because she was displaying some of the same behaviors that TLC was exhibiting and that the Valle Vista staff was attempting to stop. It was also recommended that TLC communicate with his parents only by telephone for one month in light of his behavior. Valle Vista personnel indicated that if TLC violated the rules, he would have to be placed in some other facility. Although the trial court adopted these recommendations, Valle Vista requested on December 30, 2012, that TLC be removed from its facility "due to excessive behavioral problems."

4

Appellant's App. p. 92. As a result, the State recommended that TLC be sent to the Indiana Boys' School. Instead, the juvenile court ordered TLC returned to Southwest's detention area rather than in the residential section.

On January 29, 2013, the juvenile court conducted a hearing and decided that TLC should be placed at the Gibault School for Boys, which had already accepted TLC. However, the juvenile court added that if TLC was removed from there, TLC would be moved to Southwest until he could be transported to the Logansport Juvenile Correctional Facility.

Another review hearing was conducted on April 2, 2013. Probation Officer Donna McElroy recommended that TLC be placed on home detention with electronic monitoring, which the juvenile court adopted. On July 6, 2013, at approximately 3:00 a.m., several other juveniles attempted to visit TLC, but his mother did not let them enter the residence. The next morning, TLC's mother was "venting" about the incident the night before to TLC's father. Tr. p. 306-09. TLC and his mother began fighting about the incident, and his mother called the Spencer Police Department as well as probation officer Jim Cahill. While speaking on the telephone with Spencer's assistant chief of police, TLC's mother told him that TLC had "hit her and put her in a headlock." Id. at 337. The telephone call then became disconnected.

The police arrived, and TLC admitted to one of the officers that he had put his mother in a headlock. As TLC continued shouting at the officer, TLC was arrested for

5

disorderly conduct. While TLC was in a conference room at the police station, he wrote "Fu*k You" on the walls with a marker. Id. at 343-45; 352.

Thereafter, the State filed a delinquency petition against TLC, alleging that he committed the offenses of battery and criminal mischief, both class B misdemeanors if TLC had been an adult. The State also filed a verified petition to revoke TLC's home detention.

At the conclusion of the evidentiary hearing, the juvenile court determined that the State had met its burden of proof as to all allegations and entered true findings of delinquency against TLC. The juvenile court awarded the "wardship of [TLC] to the Indiana Department of Correction for housing in any correctional facility for children." Appellant's App. p. 7. TLC now appeals.

## I. Placement-Commitment Order

TLC contends that the juvenile court erred in "sentencing" him and that he "has received unequal treatment under the law" and that his due process rights were violated. Appellant's Br. p. 14. As a result, TLC argues that either the disposition order should be set aside or his "sentence" should be revised so he can be released.

In resolving this issue, we initially observe that TLC incorrectly asserts that he is challenging the "sentence" that was imposed and applies the standard of review for such claims, such as abuse of discretion and inappropriateness of a sentence. A juvenile court's disposition is not a sentence. Jordan v. State, 512 N.E.2d 407, 408 (Ind. 1987). Juvenile dispositional decisions are reviewed for an abuse of discretion. J.S. v. State, 881

N.E.2d 26, 28 (Ind. Ct. App. 2008). We will reverse a dispositional order if the juvenile court abuses its discretion. Id. A juvenile court abuses its discretion when "the court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom." Id.

Indiana Code section 31-37-18-6 lists the various factors that a juvenile court should consider when entering a dispositional order. More particularly, this statute provides that

If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
(1) is:

(A) in the least restrictive (most family like) and most appropriate setting available; and

(B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

The trial courts are not always required to choose the least restrictive placement.

C.C. v. State, 831 N.E.2d 215, 219 (Ind. Ct. App. 2005). Courts may select a more

7

restrictive placement when "it is consistent with the safety of the community and the best interest of the child." Ind. Code § 31-37-18-6.

Turning to the circumstances here, the evidence established that TLC was given numerous opportunities to reform his behavior, but he never took these opportunities. TLC violated the electronic monitoring requirement on several occasions and even told the court that he was "going to violate that." Tr. p. 27. TLC's mother also did not care where he was placed because he "never listens to her." Id. at 32-34. TLC hits his mother, and he repeatedly informed the court that "nothing's going to work. Boys' school." Id. at 38.

TLC was in and out of Southwest because of his various violations, including many disciplinary problems at school. Id. at 45-46. As noted above, after TLC was transferred to Valle Vista, the staff ordered TLC's mother to receive a mental health evaluation because she displayed some of the behaviors that Valle Vista was attempting to get TLC to stop. Id. at 121-23. TLC was then removed from Valle Vista because of his excessive behavioral problems. TLC was rude to the staff, struck the windows with his head, and engaged in other violent acts. Id. at 172.

TLC was moved to various facilities because of his behavior. Id. at 254, 260-61, 265. However, TLC continued to reoffend. Id. at 371-72. TLC's repeated delinquent activity, which included violations of school rules, electronic monitoring, misconduct at Valle Vista, and his failure to reform in less restrictive placements, all justify the juvenile

8

court's decision to commit TLC to the DOC.  As a result, we conclude that the juvenile court did not err in its disposition on this basis.

In addition to our conclusion that the juvenile court's disposition was proper and did not constitute a "sentence" because it amounted to treatment rather than punishment, TLC presents no evidence that he was treated any differently than other juveniles under similar circumstances, so his equal protection argument fails.  TLC's argument that he was "punished" more harshly than others also fails for the same reasons.

Finally, we conclude that TLC has made no showing that the juvenile court violated TLC's due process rights.  TLC claims that the juvenile court misled him into believing that the age of eighteen was some "magic number" at which time he would be absolved of responsibility for his actions or relieved from whatever treatment or placement that best served his interests.  A juvenile court can enter indeterminate and determinate placements.  Ind. Code §§ 31-37-19-6 and -9.  Although the age of eighteen was mentioned during the course of the proceedings, neither the probation officers, the juvenile court, nor the State mentioned that age.  Tr. p. 87, 102-03, 191, 379.  Moreover, there is no showing that there was any effort to mislead TLC or his family into believing that termination of treatment and placement would cease at a certain age.  Rather, as discussed above, the juvenile court made it clear to TLC that the length of placement and treatment would be indeterminate and would be based on TLC's progress.

In sum, all of TLC's claims are based on the false premise that TLC received a sentence, which he did not.  See Newsom v. State, 851 N.E.2d 1287, 1290 (Ind. Ct. App.

9

2006) (observing that a delinquent is not a convicted person and the juvenile court's disposition does not constitute a sentence). Thus, TLC has no sentencing claim on appeal. The juvenile court tried home placement without monitoring, home placement with monitoring, Southwest, Valle Vista, and the Gibault facilities, all before turning to the DOC. For all of these reasons, we conclude that the juvenile court's placement and disposition of TLC was consistent with the logic and effect of the facts and circumstances before it. Thus, TLC's claim fails.

## II. Factual Basis for Resisting Law Enforcement

TLC next claims that an adequate factual basis did not exist for the juvenile court to conclude that TLC was guilty of what would be the crime of resisting law enforcement, had it been committed by an adult. TLC maintains that because he gave no clear answer to the juvenile court's questions regarding the factual basis for the offense, a true finding of delinquency should not have been entered as to this charge.

Indiana Code section 35-35-1-3 provides that a trial court shall not enter judgment upon a guilty plea "unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea." The trial court "should satisfy itself that the defendant could be convicted if he or she elected to stand trial." State v. Cooper, 935 N.E.2d 146, 150 (Ind. 2009). A finding of a factual basis "is a subjective determination that permits a [trial] court wide discretion." Butler v. State, 658 N.E.2d 72, 76 (Ind. 1995). Although a trial court is not required to find evidence proving guilt beyond a reasonable doubt to conclude that a factual basis exists, "a factual basis

10

exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty." Id. Relatively minimal evidence can be adequate to show a factual basis. Rhoades v. State, 675 N.E.2d 698, 700 (Ind. 1996). A trial court's determination of an adequate factual basis is presumed to be correct. Id.

When TLC committed the offense, Indiana Code section 35-44-3-3[3], provided that:

(a) A person who knowingly or intentionally: . . .

> (3) flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and order the person to stop; commits resisting law enforcement, a Class A misdemeanor.

In this case, TLC admitted to running from the police to avoid them. Tr. p. 61-68. TLC's flight was established, as well as the motive for it, which was to avoid detection for violating the curfew laws. Id. TLC stated that he would, and wanted to, admit to the resisting law enforcement allegation. Id. at 61-69. Although TLC understood that his admission would amount to a finding of delinquency, he still expressed the desire to admit to committing the offense. Id.

In light of these circumstances, TLC has left virtually no doubt as to whether or not he actually heard the officer tell him to stop, all the while admitting that he was running from the police to "get away from them." Id. at 61-69. As a result, we conclude

---

[3] As noted above, this statute is now codified at I.C. § 35-44.1-3-1(a)(3).

11

that an adequate factual basis existed for the juvenile court to accept TLC's acceptance of responsibility for fleeing the police.

### III. Commission of Battery

TLC next argues that the State failed to prove that he committed the offense of battery, had that offense been committed by an adult. Specifically, TLC maintains that the evidence was insufficient to support the juvenile court's true finding of battery because the State introduced only improper hearsay evidence to support TLC's commission of this offense.

When the State seeks to have a juvenile adjudicated as a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. Al-Saud v. State, 658 N.E.2d 907, 908 (Ind. 1995). We neither reweigh the evidence nor judge the credibility of witnesses. Vasquez v. State, 741 N.E.2d 1214, 1216 (Ind. 2001). Rather, we will look to the evidence and the reasonable inferences therefrom that support the verdict and affirm a conviction if evidence of probative value exists from which a jury or judge could find the defendant guilty beyond a reasonable doubt. Id. Thus, we will affirm the conviction—or juvenile disposition—unless we determine that no reasonable factfinder could find the elements of the delinquent act or crime to have been proved beyond a reasonable doubt. Bethel v State, 730 N.E.2d 1242, 1244 (Ind. 2000).

With regard to the battery allegation, the State's petition asserts that on or about July 6, 2013, [TLC] "did knowingly touch [his mother] in a rude, insolent, or angry

12

manner, to wit: by putting her in a headlock and striking her, all contrary to I.C. 35-42-2-1(a), Battery, a Class B Misdemeanor." In support of this allegation, the State proved that TLC hit his mother. Tr. p. 33, 337. Assistant Chief of Police Walter Tinsley testified, without any objection from TLC, that his Mother informed him in her phone call to him that TLC "had hit her and put her in a headlock." Id. at 337.

Although TLC contends that this evidence should not have been admitted because it amounted to hearsay, the objection is waived thus permitting that evidence to be considered for substantive purposes and to establish a material fact in issue. Miles v. State, 777 N.E.2d 767, 771 (Ind. Ct. App. 2002). Additionally, Officer Tinsley testified about TLC's admission to him that TLC had placed his own mother in a headlock. Tr. p. 342. Although TLC objected at this point, his objection was without merit because TLC's admission to committing the offense was admissible as a statement by a party opponent. Ind. Evid. R. 801 (d)(2).

TLC's father also described a heated verbal altercation that was consistent with the circumstances and events testified to by other witnesses. Tr. p. 306-28. As a result, the State sufficiently proved that TLC committed what would have been battery, had it been committed by an adult.

The judgment of the juvenile court is affirmed.[4]

NAJAM, J., and CRONE, J., concur.

---

[4] We note that TLC filed a "Verified Motion to Expedite Determination of Appeal" on January 15, 2014. The State filed its appellee's brief two days earlier. Because we have considered the merits of TLC's appeal and are handing down this case on February 21, 2014, TLC's motion to expedite his appeal is moot.