## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

Doug A. Bernacchi
Michigan City, Indiana

**ATTORNEYS FOR APPELLEE**

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Lax,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | April 22, 2015<br><br>Court of Appeals Case No. 71A04-1409-PC-417<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable John M. Marnocha, Judge<br><br>Cause No. 71D02-1009-PC-41 |

**Najam, Judge.**

## Statement of the Case

Mark Lax appeals the post-conviction court's denial of his petition for post-conviction relief. Lax raises two issues for our review:

1. Whether his guilty plea was supported by an adequate factual basis.

2. Whether he received ineffective assistance from his trial counsel.

We affirm.

## Facts and Procedural History

On July 28, 2008, Lax went to a gathering at a home in South Bend. An argument between Lax and the homeowner and some guests ensued, and Lax was asked to leave. Lax left but returned later with a handgun and again got into an argument with several people. Herman Troop[1] was present and, when Lax began waving the handgun around, Troop confronted Lax. The two struggled for possession of the handgun, the handgun went off, and Troop was struck by the bullet. Lax fled, and Troop died from his wound. Several witnesses identified Lax as the shooter to police, and Lax turned himself in later that day.

On July 30, the State charged Lax with murder, a felony. On August 3, 2009, after voir dire but before the start of his trial, Lax accepted a plea agreement from the State. Pursuant to that agreement, Lax pleaded guilty to voluntary manslaughter, as a Class A felony, the State agreed to dismiss the murder charge, and the parties agreed that Lax would be free to argue his sentence but

---

[1] There is clear confusion on how to spell Troop's last name. We employ the spelling used by the court reporter during Lax's guilty plea hearing.

that he would not serve an executed term greater than forty years. At the same time he accepted this agreement, Lax rejected an alternative plea agreement that would have required an executed sentence of thirty years.

[5]    Thereafter, Lax's counsel established the following factual basis for Lax's guilty plea:

> MR. WRUBLE: Mr. Lax, let me draw your attention back to July 28th, 2008, about a year ago.
>
> You were at a barbeque that evening; is that correct?
>
> THE DEFENDANT [under oath]: Yes.
>
> * * *
>
> MR. WRUBLE: And at some point you got into an argument with some of the folks there; is that right?
>
> THE DEFENDANT: Yes, sir.
>
> * * *
>
> MR. WRUBLE: And you had a gun in your possession at the time; is that right?
>
> THE DEFENDANT: Yes, sir.
>
> MR. WRUBLE: Now you at some point during this argument you were waving the gun around; is that correct?
>
> THE DEFENDANT: Yes, sir.

MR. WRUBLE: And you came across a gentleman by the name of . . . you didn't know his name, but you later found out his name was Herman Chris Troop; is that right?

THE DEFENDANT: Yes.

MR. WRUBLE: And you and Mr. Troop engaged in some fighting; is that right?

THE DEFENDANT: (indicates affirmative)

MR. WRUBLE: You head-butted him?

THE DEFENDANT: Yes.

MR. WRUBLE: And he hit you?

THE DEFENDANT: Yes.

MR. WRUBLE: And you hit him with a chair?

THE DEFENDANT: Yes.

MR. WRUBLE: And you had your gun in your hand at the time; is that right?

THE DEFENDANT: Yes.

MR. WRUBLE: And at the time that you were engaging in this conduct with a loaded gun, you were aware that there [wa]s a high probability somebody could get shot doing that?

THE DEFENDANT: Yes.

MR. WRUBLE: At some point you and Mr. Troop tussled over the gun; is that correct?

THE DEFENDANT: Yes.

MR. WRUBLE: At some point before then, when Mr. Troop had struck you, that caused you to lose your cool, so-to-speak?

THE DEFENDANT: Yes.

MR. WRUBLE: In fact, you weren't thinking under a normal deliberate . . . you weren't rational?

THE DEFENDANT: Yeah.

MR. WRUBLE: And that cause[d] you some . . . I think you told me a combination of anger, fear and some terror; is that fair to say?

THE DEFENDANT: Yes.

MR. WRUBLE: And when you and Mr. Troop were tussling over the gun, the gun went off and Mr. Troop was shot; is that right?

THE DEFENDANT: Yes.

THE COURT: Well, a couple of things I just want to clear up a little bit, Mr. Lax.

The gun was in your possession; is that correct?

THE DEFENDANT: Yes.

THE COURT: And in order for a gun to go off, someone has to pull the trigger; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT:  And so in the midst of all of this, you pulled the trigger, that caused Mr. Troop to die; is that correct?

THE DEFENDANT:  (indicates affirmative)

* * *

THE COURT:  Okay.  So essentially what you're telling me today[] is that you did act knowingly and you were not acting in self-defense . . . or at least legal self-defense; do you understand that?

* * *

THE DEFENDANT:  Yes.

Appellant's Supp. App. at 66-70.  The court accepted Lax's guilty plea and sentenced him to forty years executed.

[6]     On July 21, 2011, Lax filed an amended petition for post-conviction relief.  In relevant part, Lax asserted that his guilty plea was not established by an adequate factual basis and that Wruble, his trial counsel, had rendered ineffective assistance.  On his ineffective assistance of counsel claim, Lax argued that Wruble had not presented him with the thirty-year plea agreement and that Wruble was not properly prepared for trial because Wruble did not understand the law on reckless homicide.  In light of Wruble's misunderstandings of reckless homicide, Lax continued, Wruble improperly advised Lax to plead guilty to voluntary manslaughter.

After an evidentiary hearing, the post-conviction court rejected Lax's claims. In particular, the court found and concluded that: "Lax was presented with three separate plea proposals"; "Wruble discussed all three proposals with Mr. Lax and recommended that he accept the binding thirty (30) year agreement"; "Lax, under oath at the plea hearing, provided an adequate factual basis supporting his admission of guilt"; and, "[h]ad the case not been resolved by way of a plea agreement, Mr. Wruble was adequately prepared for trial." Appellant's App. at 27. This appeal ensued.

## Discussion and Decision

### *Standard of Review*

Lax appeals the post-conviction court's denial of his petition for post-conviction relief. Our standard of review in such appeals is clear:

> [The petitioner] bore the burden of establishing the grounds for post[-]conviction relief by a preponderance of the evidence. *See* Ind. Post–Conviction Rule 1(5); *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001). Post-conviction procedures do not afford a petitioner with a super-appeal, and not all issues are available. *Timberlake*, 753 N.E.2d at 597. Rather, subsequent collateral challenges to convictions must be based on grounds enumerated in the post-conviction rules. *Id.* If an issue was known and available, but not raised on direct appeal, it is waived. *Id.* If it was raised on appeal, but decided adversely, it is res judicata. *Id.*

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting the post-conviction court's judgment. *Hall v. State*, 849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of the witnesses.

*Id.* at 468-69. Because he is now appealing from a negative judgment, to the extent his appeal turns on factual issues [the petitioner] must convince this court that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *See Timberlake*, 753 N.E.2d at 597. We will disturb the decision only if the evidence is without conflict and leads only to a conclusion contrary to the result of the post-conviction court. *Id.*

*Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. On appeal, Lax asserts that the trial court lacked an adequate factual basis to accept his guilty plea and that Lax received ineffective assistance from his trial counsel. We address each issue in turn.

### Issue One: Factual Basis for Guilty Plea

[9] We first address Lax's claim that his guilty plea was not established by an adequate factual basis. As we have explained:

> Ind[iana] Code [Section] 35-35-1-3(b) provides in relevant part that "the court shall not enter judgment upon a plea of guilty unless it is satisfied from its examination of the defendant or the evidence presented that there is a factual basis for the plea." The factual basis requirement primarily ensures that when a plea is accepted there is sufficient evidence that a court can conclude that the defendant could have been convicted had he stood trial. *Butler v. State*, 658 N.E.2d 72, 76 (Ind. 1995). A finding of factual basis is a subjective determination that permits a court wide discretion which is essential due to the varying degrees and kinds of inquiries required by different circumstances. *Id.* at 76-77. A factual basis exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty. *Id.* at 77. Trial court determinations of adequate factual basis, like other parts of the plea process, arrive

here on appeal with a presumption of correctness. *Id.* We typically review claims of error about pleas under an abuse of discretion standard. *Id.* This standard is also appropriate where, as here, the Petitioner asks that his plea be set aside through a motion for post-conviction relief on grounds that the factual basis was inadequate. *See id.*

An adequate factual basis for the acceptance of a guilty plea may be established in several ways: (1) by the State's presentation of evidence on the elements of the charged offenses; (2) by the defendant's sworn testimony regarding the events underlying the charges; (3) by the defendant's admission of the truth of the allegations in the information read in court; or (4) by the defendant's acknowledgment that he understands the nature of the offenses charged and that his plea is an admission of the charges. *Madden v. State*, 697 N.E.2d 964, 967 (Ind. Ct. App. 1998).

*Oliver v. State*, 843 N.E.2d 581, 588 (Ind. Ct. App. 2006), *trans. denied*.

[10] Here, there is no question that the post-conviction court did not err when it concluded that an adequate factual basis existed for Lax's guilty plea. As quoted extensively above, while under oath, Lax testified to the events underlying the charge of voluntary manslaughter, and his testimony easily demonstrated the elements of that offense. *See* Ind. Code § 35-42-1-3. We reject Lax's arguments to the contrary on appeal.

### Issue Two: Assistance of Counsel

[11] We next consider Lax's claim that he received ineffective assistance from his trial counsel. Specifically, he argues that Wruble did not adequately advise him before Lax entered into his guilty plea. A claim of ineffective assistance of

counsel must satisfy two components. *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687-88. Second, the defendant must show prejudice: a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694.

[12] Lax first asserts that Wruble never presented him with the plea agreement offer that would have required a thirty-year sentence. But Wruble testified before the post-conviction court that he had presented that plea agreement to Lax and Lax, against Wruble's recommendation, had rejected the offer. And the post-conviction court expressly relied on Wruble's testimony in its findings of fact and conclusions of law. Thus, Lax's argument on this point is without merit.

[13] Lax also asserts that Wruble misadvised him on the law of reckless homicide, which caused Lax to plead guilty to voluntary manslaughter. The premise underlying this issue is Lax's assertion that, had he gone to trial, he would have been entitled to a jury instruction on reckless homicide as a lesser-included offense to murder on the theory that the State would not have been able to show that Lax knowingly or intentionally, rather than recklessly, fired the handgun. *See* I.C. § 35-42-1-5. Thus, Lax continues, Wruble rendered ineffective assistance when Wruble supposedly advised Lax that "the law

would have prevented a jury instruction on [r]eckless homicide." Appellant's Br. at 14.

[14] But our supreme court has recognized that it is "a reasonable strategic decision for defense counsel" to avoid a jury instruction that "would have been inconsistent with Defendant's testimony." *Morgan v. State*, 755 N.E.2d 1070, 1076 (Ind. 2001). *Morgan* applies here. Wruble testified before the post-conviction court as follows:

> Q. [by Lax's counsel]: Did you explain if you went to trial, the jury would possibly be instructed to find for a lesser included charge of reckless homicide?
>
> A. Actually, I advised Mr. Lax by letter that there was a real serious danger that the Court would not provide a reckless homicide instruction, because Mr. Lax, contrary to my advice, spoke to Detective James Taylor without counsel present, and made a claim of self-defense.
>
> It's quite hard to argue on the one hand that it's self-defense, then on the other hand it's reckless behavior.
>
> And there is case law . . . that if you claim self-defense, you may not be entitled to a reckless homicide instruction. [*See, e.g.*, *Brown v. State*, 703 N.E.2d 1010, 1021 (Ind. 1998).]
>
> I explained all of that to Mr. Lax.

[15] Tr. at 14-15. In light of Wruble's testimony, Lax's assertion that Wruble either misunderstood the law on this issue or misadvised Lax is not well taken. Rather, it is clear that Wruble faced a reasonable, strategic choice on how to

proceed at trial in the event that Lax did not plead guilty, and it was uncertain whether Lax would have been entitled to a reckless homicide instruction. As such, Lax cannot demonstrate that Wruble rendered deficient performance, and the post-conviction court's denial of Lax's petition on this issue is not clearly erroneous.

[16] In sum, we affirm the post-conviction court's denial of Lax's petition for post-conviction relief.

[17] Affirmed.

Baker, J., and Friedlander, J., concur.