# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 13 2016, 5:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

APPELLANT PRO SE

Sam Milligan
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

Sam Milligan,

*Appellant-Petitioner*,

v.

State of Indiana,

*Appellee-Respondent*.

October 13, 2016

Court of Appeals Case No.
02A04-1602-PC-263

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D04-8509-CF-393

**Brown, Judge.**

[1] Sam Milligan appeals the denial of his successive petition for post-conviction relief. Milligan raises seven issues which we consolidate and restate as whether the post-conviction court erred in denying his petition. We affirm.

*Facts and Procedural History*

[2] On September 20, 1985, Milligan was involved in a domestic dispute that resulted in a double homicide and an attempted murder of a third person. On September 25, 1985, the State charged Milligan with the murders of Margaret Milligan and Nkosana Ncube and the attempted murder of Thandeka Ncube. In October 1985, the State filed an application for death sentence, citing Ind. Code § 35-50-2-9(b)(8), and alleging that Milligan committed the murder of Margaret and Nkosana on September 20, 1985.[1]

[3] At some point, Donald C. Swanson, Jr., filed an appearance on Milligan's behalf.[2] On October 28, 1985, Attorney Swanson filed a Notice of Defense of Mental Disease or Defect requesting that the court appoint three disinterested psychiatrists to examine Milligan, and the court granted the request.[3] On

---

[1] At the time of the offense, Ind. Code § 35-50-2-9(a) provided that the State "may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b)," and subsection (b)(8) provided: "The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder." (Subsequently amended).

[2] The Appellant's Appendix contains a chronological case summary for the underlying cause number 02D04-8509-CF-393, but the first entry occurs in 1993.

[3] The order granting the request appointed Dr. Robert L. Greenlee, Dr. Ronald L. Pancner, and Dr. Joseph Fiacable. The order contains a handwritten notation near the date associated with Dr. Fiacable which states "canceled." Appellant's Appendix at 25.

November 25, 1985, Attorney Swanson filed a motion to withdraw appearance and requested that the court appoint a public defender.

[4] In a letter to the court dated November 13, 1985, Dr. Robert L. Greenlee stated that he found no history of psychiatric treatment or hospitalization, found Milligan to be oriented as to time, place, and person, found no evidence of delusional thinking, and observed that Milligan denied hallucinations and drug use at the time of the alleged offense. Dr. Greenlee concluded that Milligan was sane at the time of the alleged offense, able to understand the nature of the charges against him, and able to assist his counsel in preparation of his defense.

[5] In a letter to the court dated December 10, 1985, Dr. Ronald J. Pancner stated that he reviewed the probable cause affidavit[4] and concluded that Milligan was competent to stand trial and understood the charges and that the act of killing is illegal and morally wrong. He concluded that Milligan was verbal and able to answer questions and able to assist his counsel in the preparation of his defense. He also concluded that Milligan was sane at the time of the offense, that he demonstrated no signs of any major psychiatric disorder, and that he denied any history of serious psychiatric symptoms such as delusions or hallucinations.

---

[4] The probable cause affidavit alleged in part that the police discovered Milligan had suffered an apparent self-inflicted gunshot wound.

[6]     On December 11, 1985, Jerry E. Levendoski filed an appearance for Milligan.[5] In February 1986, Attorney Levendoski filed a motion requesting the court to order an encephalogram examination of Milligan and to appoint a psychiatrist or psychologist for the purpose of developing a complete psychological profile of Milligan in order to assist counsel in the development and presentation of Milligan's defense in both phases of the trial. He also filed a Motion to Dismiss Count IV State's Motion for the Death Penalty, arguing that it would be a violation of due process and the Fourteenth Amendment to the United States Constitution to try Milligan for both charges of murder before the same jury and then use one of the charged murders as an aggravating circumstance to impose the death penalty in the other charged murder.

[7]     On February 11, 1986, Attorney Swanson again filed an appearance for Milligan. On February 12, 1986, the court entered an order stating that, at the request of Attorney Swanson, the court arranged a third psychiatric evaluation of Milligan by Dr. Herbert Trier.

[8]     In a letter to the court dated March 17, 1986, Dr. Trier wrote that he examined Milligan and found that he was able to assist in his own defense, was able to understand the nature of the charges against him, and was sane at the time of the offense.

---

[5] The appearance filed by Attorney Levendoski requested that he appear as co-counsel. Some of the motions filed by Attorney Levendoski were filed with Attorney Bruce S. Cowen, who filed a motion to withdraw in February 1986.

[9] On July 10, 1986, Milligan filed a "Motion to Withdraw Former Plea of Not Guilty and Enter a Plea of Guilty to Count I, 'Murder', Count II, 'Murder', and Count III, 'Attempt-Murder.'" Appellant's Appendix at 45. The motion, which was signed by Milligan and his counsel, stated in part that the guilty plea was being made "knowingly and voluntarily pursuant to a plea agreement which has been marked Exhibit 'A-1'" and that "I represent that I have read the plea agreement or I have had it read to me, and that I fully understand it." *Id.* at 48. That same day, the State filed a Notice of Recommendation by State on Plea of Guilty which recommended the sentence for each count of murder be sixty years, that the sentence for attempted murder be fifty years, and that the sentences be served consecutive to each other for an aggregate sentence of 170 years. The notice also stated that a specific condition of the plea agreement was that Milligan agreed that his stepdaughter, Thandeka T. Ncube, desired to maintain her residence in the United States, that Milligan's cooperation would be needed from time to time to help to minimize the possibility that Thandeka would be deported to South Africa, that Milligan agreed to execute all papers and documents prepared on behalf of Thandeka by her attorney, and that he pledged good faith cooperation in all matters related thereto.[6]

[10] On July 10, 1986, the court held a guilty plea hearing at which Milligan was present and represented by counsel, and the following exchange occurred:

---

[6] The prosecutor and Thandeka signed this notice.

[Milligan's Counsel:] Your Honor, at this time, the defendant would tender to the court a Motion to Withdraw Former Pleas of Not Guilty and enter a plea of guilty to Count I, Count II and Count III, pursuant to a plea agreement. The plea agreement is attached to those motions. The motions are signed by myself and my client, Mr. Milligan.

[Prosecutor:] Your Honor, in light of the defendant and his attorney's written motion, the State would file in open court, a written recommendation upon a plea of guilty to Counts I, II, and III.

Appellee's Appendix at 5.

During questioning by the court, Milligan provided his name and age. The following exchange then occurred:

[The Court:] Mr. Milligan, before this court can accept your pleas of guilty, I must be satisfied that you fully understand your constitutional rights; that your pleas of guilty are made freely, voluntarily, and that you are, in fact, guilty. It will, therefore, be necessary that I ask you certain questions and hear some evidence. If you do not understand the questions or the words that I use, please let me know and I will explain them to you. You may also talk with your attorney at any time. Have you ever been treated for any mental illness or, to your knowledge, do you now suffer from any mental or emotional disability?

A I haven't been treated for any, but I don't know what I'm suffering – probably suffered some.

[Milligan's Trial Counsel:] Your Honor, my client has, pursuant to our notice of intention to file an insanity plea, been examined by two court appointed psychiatrists, both of whom found him

not only sane at the time of the commission of these incidents, but also competent to assist his counsel in his representation. Other than that, I know of no other psychiatric or psychological counseling or problems that he has had in the past.

Q Okay. Is that correct, Mr. Milligan?

A Yes.

*Id.* at 6-7. The court then asked Milligan questions regarding whether he was under the influence of alcohol or drugs, his intention to plead guilty, and whether he understood his rights, and answered the questions.

[12] The court then read the charging informations, and Milligan indicated that he understood that pleading guilty constituted an admission of the truth of the material facts. The court asked Milligan if he understood that the sentence for Counts I and II could include a death sentence because the State filed a motion for the death penalty, and Milligan indicated that he understood. He indicated that he read the plea agreement and discussed it with his attorney, and responded affirmatively when asked if his pleas were of his own free and voluntary acts.

[13] The following exchange occurred between the court and Milligan:

Q I have before me a plea agreement. Did you read it?

A Yes.

Q Did you discuss it with your attorney?

A  Well, yes.

Q  It reads as follows, omitting formal parts:  It says, "That you would be convicted and sentenced in Count I of Murder, a felony, Count II Murder, a felony.  Count III, Attempted Murder, a Class A felony.  That the sentence in Count I would be sixty years to serve.  That the sentence in Count II would be sixty years to serve, consecutive to the sentence in Count I, for a total of 120 years.  The sentence in Count III would be 50 years to serve consecutive to the sentences imposed in Counts I and II for accumulative [sic] sentence of 170 years on all three counts.  As a specific condition of this plea agreement, the defendant agrees that his . . . stepdaughter Thandeka T. Ncube, desires to maintain her residence in the United States of America.  That the defendant's cooperation will be needed from time to time to help to minimize the possibility that said Thandeka T. Ncube will be deported to South Africa.  That the defendant is aware that the prosecuting attorney's office has solicited the aid of attorney, . . . to aid the victim in this cause and the prosecuting attorney's office is securing permanent residence status for said Thandeka T. Ncube.  That the defendant specifically agrees that he will execute all papers and documents prepared on behalf of Thandeka T. Ncube by her attorney and that the defendant will also pledge good faith cooperation in all matters related thereto."  Is that what you understand the agreement to be?

A  Yes.

*Id.* at 15-17.  The court asked Milligan how he pled as to each count, and Milligan responded "Guilty" each time.  *Id.* at 19-20.

[14]  The prosecutor then asked Milligan if he read his written motion and that he was asking the court to take into account all the things that he and his attorney went over and filed in open court, and Milligan answered: "Yes."  *Id.* at 20.

The prosecutor introduced video taped statements from Pearl Washington, Violet Washington, and Thandeka Ncube.[7] Milligan's counsel stated that he had no objection and stipulated to the exhibits. The prosecutor also introduced a police report, and Milligan's counsel also stipulated to that exhibit. The court admitted the coroner's reports and the psychiatric evaluations without objection.[8]

[15] The court found that Milligan understood the nature of the charges against him and the possible sentences, that his pleas were freely and voluntarily made, and that there was a factual basis for the pleas, and took the pleas under advisement.

[16] On August 5, 1986, the court sentenced Milligan to sixty years for each count of murder and fifty years for attempted murder and ordered that the sentences be served consecutive to each other.

[17] On January 26, 1996, Milligan filed a *pro se* petition for post-conviction relief.[9] On June 12, 1996, the post-conviction court denied the petition.[10]

---

[7] The record does not contain a copy of the statements.

[8] The record appears to contain only the coroner's report related to Margaret Milligan.

[9] The record does not contain a copy of this petition.

[10] The record does not contain a copy of this order.

[18] On April 25, 2000, this court granted Milligan permission to file a successive petition for post-conviction relief. In May 2000, Milligan, *pro se*, filed a form successive post-conviction relief petition.

[19] On May 30, 2000, the State filed an answer to Milligan's petition. On February 11, 2015, the State filed a Motion to Require Petitioner to Submit Case by Affidavit pursuant to Post-Conviction Rule 1(9)(b),[11] and the court granted the motion and gave Milligan until June 15, 2015 to submit his case by affidavit. On June 15, 2015, Milligan filed his affidavit in support of his verified petition for post-conviction relief. In October 2015, Milligan filed a motion to incorporate exhibits, and the court granted the motion. On January 7, 2016, the court denied Milligan's petition.

## *Discussion*

[20] Before addressing Milligan's allegations of error, we observe that Milligan is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. We also note the general standard under which we review a post-conviction

---

[11] Ind. Post-Conviction Rule 1(9)(b) provides in part:

> In the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit. It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing. If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

A. *Competency*

Milligan argues that he was incompetent to enter a plea of guilty. He asserts that despite the number of psychiatric evaluations, the court failed to conduct a hearing on the issue of competency or declare a determination of competency. He contends that the written evaluations by Dr. Greenlee and Dr. Trier did not address the issue of his attempted suicide. He argues that the evidence of his attempted suicide and statements made by him as to his mental state and uncertainty about understanding the charges filed against him seriously undermined his competency at the change of plea hearing.

[22]    The State argues that the trial court implicitly found that no competency hearing was needed, points out that defense counsel stated in open court that the appointed psychiatrists found Milligan to be not only sane at the time of the crimes but also competent to assist counsel in the proceedings, and asserts that it did not appear that any of Milligan's words or actions at the plea hearing cast any doubt upon his competency.

[23]    With respect to this argument, the post-conviction court concluded in part:

> 3.  It is evident that the Court's reason for not conducting a competency hearing was that the Court found a competency hearing was not needed, in view of [defense counsel's] representations and the Court's own observations, especially with regard to Mr. Milligan's acknowledged understanding of his rights, the charges, the possible penalties, and the provisions of the plea agreement.  This was an adequate basis for the decision not to hold a competency hearing. . . .

> 4.  . . . .  Mr. Milligan expressed no uncertainty about his understanding of the charges, but rather specifically stated with respect to each charge that he understood he was admitting the truth of all material facts alleged in the charging informations. He did state that he had probably suffered from some mental or emotional disability, but acknowledged that he had been found competent and sane by the psychiatrists.  His assertion that he had attempted to commit suicide does not appear to be corroborated by independent evidence.  A convicted defendant's uncorroborated, self-serving statements do not suffice to support a claim for post-conviction relief. *McChristion v. State*, 511 N.E.2d 297, 301 (Ind. 1987).  Furthermore, even if he did attempt suicide, this would not establish that he lacked the ability to understand the proceedings and to consult with counsel. *See Weedman v. State*, 21 N.E.3d 873, 881 (Ind. Ct. App. 2014), *trans.*

*denied* (defendant Weedman was found competent to stand trial although he had attempted suicide). Even facts having a greater tendency than a single suicide attempt to cast doubt upon a defendant's mental functioning, such as the defendant's delusion that there is an organized, systematic conspiracy against him, do not necessarily establish that the defendant is incompetent. *Matheney v. State*, 688 N.E.2d 883, 891-892 (Ind. 1997)[, *reh'g denied*, *cert. denied*, 525 U.S. 1148, 119 S. Ct. 1046 (1999)].

Appellant's Appendix at 11-13 (some citations omitted).

[24] A guilty plea constitutes a waiver of constitutional rights and this waiver requires a trial court to evaluate the validity of every plea before accepting it. *Davis v. State*, 675 N.E.2d 1097, 1102 (Ind. 1996). For the plea to be valid, the defendant's decision to plead guilty must be knowing, voluntary and intelligent. *Id.* (citing *Boykin v. Alabama*, 395 U.S. 238, 242-244, 89 S. Ct. 1709, 1711-1713 (1969)). A competency hearing is required only when there is evidence before the trial court that creates a reasonable and bona fide doubt as to the defendant's competency. *Evans v. State*, 489 N.E.2d 942, 948 (Ind. 1986). The presence of indicators sufficient to require the court to hold a hearing lies within the province of the trial judge and will not be disturbed absent an abuse of discretion. *Id.* (citing *Perry v. State*, 471 N.E.2d 270 (Ind. 1984)).

[25] Based upon the three psychiatric evaluations all of which concluded that Milligan was competent to stand trial and Milligan's responsive and coherent exchanges with the trial court at the guilty plea hearing, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *See Underhill v. State*, 477 N.E.2d

284, 287-288 (Ind. 1985) (rejecting the petitioner's argument that the trial court erred when it accepted his guilty plea without first holding a competency hearing where three doctors agreed that the petitioner was competent to stand trial and the trial court was in an excellent position to observe the demeanor of the appellant during the hearing).

B. *Written Plea Agreement*

Milligan argues that that trial court erroneously accepted his plea based upon a non-existent written plea agreement. The State argues that Milligan has no basis for asserting that the written plea agreement was non-existent or otherwise invalid, and that his motion to withdraw his former plea of not guilty and enter pleas of guilty and the notice of recommendation constitute the written plea agreement.

At the time that Milligan pled guilty, Ind. Code § 35-35-3-3(a) provided:

> No plea agreement may be made by the prosecuting attorney to a court on a felony charge except:
>
> > (1) in writing; and
>
> > (2) before the defendant enters a plea of guilty.
>
> The plea agreement shall be shown as filed, and if its contents indicate that the prosecuting attorney anticipates that the defendant intends to enter a plea of guilty to a felony charge, the court shall order the presentence report required by IC 35-38-1-8 and may hear evidence on the plea agreement.

(Subsequently amended by Pub. L. No. 136-1987, § 4).

[28]     Milligan filed a "Motion to Withdraw Former Plea of Not Guilty and Enter a Plea of Guilty to Count I, 'Murder', Count II, 'Murder', and Count III, 'Attempt-Murder,'" which was dated July 10, 1986. Appellant's Appendix at 45-48. This motion was signed by Milligan and his counsel and stated in part:

> I represent to the Court that this guilty plea is being made knowingly and voluntarily pursuant to a plea agreement which has been marked Exhibit "A-1" and attached to this document as an intricate part hereof. I represent that I have read the plea agreement or I have had it read to me, and that I fully understand it.

*Id.* at 48. The Notice of Recommendation by State of Plea of Guilty was dated July 10, 1986, and detailed the State's recommendation for sentencing. At the beginning of the guilty plea hearing, Milligan's counsel stated "at this time, the defendant would tender to the court a Motion to Withdraw Former Pleas of Not Guilty and enter a plea of guilty to Count I, Count II and Count III, pursuant to a plea agreement. The plea agreement is attached to those motions." Appellee's Appendix at 5. The trial court stated that it had a plea agreement, and Milligan indicated that he read it and discussed it with his attorney. The court then stated it would read an excerpt from the plea agreement and this excerpt appears to come from the Notice of Recommendation by State of Plea of Guilty. Milligan then indicated that that

was what he understood the agreement to be. Under these circumstances, we cannot say that Milligan has demonstrated that reversal is warranted.[12]

C. *Factual Basis*

[29] Milligan argues that the trial court failed to establish a sufficient factual basis for the guilty plea. He asserts that he never made an evidentiary admission of the facts or admitted to the element of intent. Without citation to authority, he asserts that the video taped statements could not represent evidence toward a factual basis or to establish the necessary *mens rea*.

[30] The State argues that the adequacy of the factual basis was *res judicata*, not subject to relitigation in a successive post-conviction proceeding. The State also notes that even if this claim is available for review, an adequate factual basis can be established where the defendant acknowledges that he understands the nature of the offenses and that his plea is an admission of the charges.

[31] As to Milligan's assertion that a sufficient factual basis had not been established, the post-conviction court's order states:

---

[12] Milligan also argues that the plea agreement exceeded the penal consequences for the offense and should be voided because it contained an illegal term that required him to cooperate with the attorneys of Thandeka T. Ncube, constituted a separate civil penalty not authorized by the legislature, and represented a cumulative punishment prohibited by double jeopardy. Milligan does not cite to specific authority that this type of provision is improper nor does he develop a cogent argument as to this issue. Accordingly, we conclude that this argument is waived. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument).

9. Mr. Milligan asserts that the factual basis is insufficient to support his guilty plea. This issue was decided against Mr. Milligan in his first post-conviction proceeding. Conclusions of Law, June 12, 1996, ¶ 2. Repetitious litigation of essentially the same dispute is not permitted. *Hughes v. State*, 880 N.E.2d 1186, 1188 (Ind. 2008); *Sweeney v. State*, 704 N.E.2d 86, 94 (Ind. 1998), *cert. denied*, 527 U.S. 1035[, 119 S. Ct. 2393 (1999)]. Mr. Milligan therefore cannot raise the same issue again in this successive post-conviction proceeding.

10. Furthermore, even if Mr. Milligan could now raise that issue, he would not be entitled to prevail. A factual basis is sufficiently established when the defendant, after having been read the charging information, admits that the allegations of the information are true. *Melton v. State*, 611 N.E.2d 666, 669 (Ind. Ct. App. 1993), *trans. denied*, and cases cited therein; *see also Butler v. State*, 658 N.E.2d 72, 77 (Ind. 1995). Mr. Milligan was read the charging informations; he expressed his understanding that, by pleading guilty, he was admitting the truth of all material facts alleged in the informations; and, having this understanding, he explicitly entered a plea of guilty to each count. Plea, at 6-8. This was sufficient to establish a factual basis.

11. Finally, in order to obtain post-conviction relief on the ground of inadequate factual basis for a guilty plea, a convicted defendant must show that he suffered prejudice as a result of the lack of a proper factual basis. *State v. Eiland*, 707 N.E.2d 314, 316-317 (Ind. Ct. App. 1999), [*reh'g denied*,] *adopted*, 723 N.E.2d 863, 864-865 (Ind. 2000). Mr. Milligan has made no showing of prejudice resulting from the allegedly inadequate factual basis.

Appellant's Appendix at 15-16.

[32] Even assuming that Milligan could raise this issue in his successive petition for post-conviction relief, we cannot say that it warrants reversal. Trial court

determinations of adequate factual bases, like other parts of the plea process, arrive here on appeal with a presumption of correctness. *Butler v. State*, 658 N.E.2d 72, 77 (Ind. 1995). The Indiana Supreme Court has held that a factual basis exists when there is evidence about the elements of the crime from which a court could reasonably conclude that the defendant is guilty. *Id.* Relatively minimal evidence has sometimes been held adequate. *Id.* (citing *Lowe v. State*, 455 N.E.2d 1126, 1129 (Ind. 1983) (defendant's admission of guilt after prosecutor read all allegations adequately established factual basis)).

[33] At the guilty plea hearing, the court read the charging informations, and Milligan indicated that he understood that pleading guilty constituted an admission of the truth of the material facts. Specifically, the following exchange occurred between the court and Milligan:

> Q Do you understand that the charges to which you are pleading guilty: Count I, Murder; Count II, Murder; and, Count III, Attempted Murder, and that in order to be guilty of these crimes, the State must prove each of the following elements beyond a reasonable doubt. First, in regard to Count I, the charge of Murder, "That on or about the 20th day of September, 1985, in Allen County, Indiana, that you did, knowingly or intentionally kill Margaret Milligan, another human being, to-wit: By shooting at and against the body of Margaret Milligan with a deadly weapon, to-wit: a gun, thereby inflicting a mortal wound in and upon the body of Margaret Milligan, causing her to die on September 20, 1985, being contrary to the form of the statute in such case made and provided." Do you understand that pleading guilty to this charge, you are admitting the truth of all material facts that I just related to you?

A  Yes.

Q  Count II, the charge of Murder: "On or about the 20th day of September, 1985, in Allen County, Indiana, that you did knowingly or intentionally kill Nkosoma[13] Ncube, another human being, to-wit: by shooting at and against the body of Nkosoma Ncube, with a deadly weapon, to-wit: a gun, thereby inflicting a mortal wound in and upon the body of Nkosoma Ncube, causing him to die on September 20, 1985, being contrary to the form of the statute in such case made and provided."  Do you understand that by pleading guilty to this charge, you are admitting the truth of all material facts that I just related to you?

A  Yes.

Q  In regard to Count III, the information for Attempted Murder. "That on or about the 20th day of September, 1985, in Allen County, Indiana, that you did attempt to commit the crime of Murder of Thandeka Ncube, another human being, in that said Sam Milligan did knowingly or intentionally attempt to kill said Thandeka T. Ncube, by shooting at and against the body of Thandeka T. Ncube, with a deadly weapon, to-wit: a gun, inflicting serious bodily injury which conduct constituted a substantial step toward the commission of the crime of murder against Thandeka T. Ncube, being contrary to the form of the statute in such case made and provided."  Do you understand that by pleading guilty to this charge, you are admitting the truth of all material facts that I just related to you?

A  Yes.

---

[13] The charging information spelled the name "Nkosana."  Appellant's Appendix at 20.

Appellee's Appendix at 9-11. We also note that the motion to plead guilty, which was signed by Milligan, stated that he had either been provided with a copy of the charging informations or that he had the charging informations read to him, that he understood the nature of the charges against him, and that a plea of guilty is an admission of the truth of the material facts set forth in the charging information. Further, the coroner's report, which was admitted without objection, indicated the cause of death of Margaret Milligan to be multiple gunshot wounds to the head.

[34] Under the circumstances, we cannot say that reversal is warranted on this basis. *See Butler*, 658 N.E.2d at 77 (observing that the petitioner told the trial judge that the allegations of the information were accurate and that the Court could not say that all the evidence pointed unmistakably to a conclusion opposite that reached by the post-conviction court.)

D. *Ineffective Assistance*

[35] Milligan argues that he received ineffective assistance of counsel because his counsel failed to conduct a reasonable and adequate factual investigation into his mental history and competency, failed to challenge the perfunctory examination reports dealing with his competency, failed to request a competency hearing, failed to request the court to make a declaration on his competency prior to accepting his guilty plea, advised him to accept a plea agreement that contained the clause regarding Thandeka, and allowed the factual basis to be established in such a manner absent evidence or admission by

Milligan on the statutory element of intent as the requisite *mens rea* for acceptance of the plea. Milligan also argues that his guilty plea was not made knowingly and intelligently because it was induced by an unconstitutional death penalty aggravating factor and that his counsel was ineffective for failing to challenge the constitutionality of Ind. Code § 35-50-2-9(b)(8) as applied to him.

[36] The State contends that Milligan has not established error with respect to any issue and has failed to establish that his counsel's performance was deficient. The State also asserts that there is no claim that Milligan had any affirmative defenses, that this appears to be a case where the surviving victim was a witness to the crimes and provided direct evidence of Milligan's guilt, and that pleading guilty by an agreement that dismissed the State's death penalty request appears to be a fundamentally fair and reliable outcome.

[37] To the extent that Milligan suggests he would not have pled guilty if his trial counsel had not committed the alleged errors and omissions, we observe that, with respect to the voluntariness of his guilty plea, the Indiana Supreme Court has held that a plea entered after the trial judge has reviewed the various rights which a defendant is waiving and made the inquiries called for by statute is unlikely to be found wanting in a collateral attack. *State v. Moore*, 678 N.E.2d 1258, 1265 (Ind. 1997), *reh'g denied*, *cert. denied*, 523 U.S. 1079, 118 S. Ct. 1528 (1998). However, defendants who can show that they were coerced or misled into pleading guilty by the judge, prosecutor or defense counsel will present colorable claims for relief. *Id.* at 1266. In assessing the voluntariness of the

plea, we review all the evidence before the court which heard his post-conviction petition, including the transcript of the petitioner's original sentencing, and any plea agreements or other exhibits which are a part of the record. *Id.* In *Moore*, the Court held that "[v]oluntariness is also distinct from ineffective assistance of counsel, despite some references in our cases to pleas as involuntary" and that voluntariness "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Id.*

[38] Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[39] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997).

[40] Because Milligan was convicted pursuant to a guilty plea, we analyze his claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* categorizes two main types of ineffective assistance of counsel cases. *Smith v. State*, 770 N.E.2d 290, 295 (Ind. 2002). The first category relates to "an unutilized defense or failure to mitigate a penalty." *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003), *trans. denied*. The second relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." *Id.* Milligan appears to raise claims under both categories.

[41] In *Segura,* the Court held "in order to establish that the guilty plea would not have been entered if counsel had performed adequately, the petitioner must show that a defense was overlooked or impaired and that the defense would likely have changed the outcome of the proceeding." 749 N.E.2d at 499. The Court stated that "in the case of claims related to a defense or failure to mitigate

a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial." *Id.* at 507. If a petitioner is convicted pursuant to a guilty plea "and later claims that his counsel rendered ineffective assistance because counsel overlooked or impaired a defense, the petitioner must show that a defense was indeed overlooked or impaired and that the defense would have likely changed the outcome of the proceeding." *Maloney v. State*, 872 N.E.2d 647, 650 (Ind. Ct. App. 2007).

[42] With respect to claims of exaggerated penalty, the *Segura* Court stated:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

*Segura*, 749 N.E.2d at 504-505.

[43] In light of Milligan's trial counsel's filing of a Notice of Defense of Mental Disease or Defect requesting that the court appoint three disinterested psychiatrists to examine him which was granted by the trial court, and the three letters that all concluded that Milligan was competent, as well as his trial counsel's filing of the motion requesting the court to order an encephalogram examination of Milligan, we cannot say that his trial counsel were ineffective regarding challenging his competency or the trial court's handling of the issue.

As for Milligan's argument that his trial counsel was ineffective for advising him to accept a plea agreement that contained the clause regarding Thandeka, we noted earlier that we cannot say that he develops a cogent argument as to this issue. With respect to his argument regarding the factual basis, we concluded above that a sufficient factual basis existed.

[44] To the extent that Milligan asserts that his trial counsel failed to challenge the constitutionality of Ind. Code § 35-50-2-9(b)(8) as applied to him or that his plea was not made knowingly and intelligently because it was induced by an unconstitutional death penalty aggravating factor, he discusses *State v. McCormick*, 272 Ind. 272, 397 N.E.2d 276 (1979), and *Conner v. State*, 580 N.E.2d 214 (Ind. 1991), *cert. denied*, 503 U.S. 946, 112 S. Ct. 1501 (1992), *reh'g denied*, and asserts that the "narrowing process set forth under subsection (b)(8) is capricious and arbitrary under those decisions." Appellant's Brief at 13.

[45] The State argues that the aggravator could properly have applied to Milligan because he committed two murders at the same time and that, while Milligan acknowledges *McCormick* and *Conner*, he improperly claims those decisions are capricious and arbitrary.

[46] We observe that Milligan's trial counsel filed a Motion to Dismiss Count IV, State's Motion for the Death Penalty, arguing that it would be a violation of due process and the Fourteenth Amendment to the United States Constitution to try Milligan for both charges of murder before the same jury and then use one of the charged murders as an aggravating circumstance to impose the death

penalty in the other charged murder. Moreover, as explained below, we cannot say that *McCormick* or *Conner* require reversal or that the aggravator pursuant to Ind. Code § 35-50-2-9(b)(8) constituted an illusory threat.

[47] At the time of the offense, Ind. Code § 35-50-2-9 provided:

> (a) The state may seek a death sentence for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one (1) of the aggravating circumstances listed in subsection (b). In the sentencing hearing after a person is convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged.

> (b) The aggravating circumstances are as follows:

> \* \* \* \* \*

> (8) The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder.

[48] In *McCormick*, Count I alleged that Jesse A. McCormick strangled a man on October 5, 1978, resulting in his later death. 272 Ind. at 275, 397 N.E.2d at 278. Count II set forth an allegation which allegedly constituted one of the statutory aggravating circumstances. *Id.* Specifically, Count II was brought under Ind. Code § 35-50-2-9(b)(8) and alleged that McCormick murdered another man on May 17, 1977. *Id.* In a separate cause, McCormick also stood charged with the murder of the man on May 17, 1977, and McCormick had not been tried on that charge. *Id.* The State and McCormick stipulated that the

two killings were not related or connected in any way. *Id.* The Court held that the effect of the statutory procedure would be that the defendant would be fully tried on two separate and unrelated charges before the same jury and that he would be tried on the second count to a jury which had been undeniably prejudiced by having convicted him of an unrelated murder. *Id.* at 278, 397 N.E.2d at 280. The Court held that Ind. Code § 35-50-2-9(b)(8) denied due process as applied to the defendant and confined its holding to those cases in which the murder alleged as an aggravating circumstances is not related to the principal murder charge. *Id.* at 280, 397 N.E.2d at 281.

[49]  In *Conner*, the defendant was convicted of three counts of murder and sentenced to death. 580 N.E.2d at 216. The Court addressed the defendant's argument that the prosecutor's discretion to charge the death penalty count renders the penalty arbitrary and capricious and, therefore, cruel and unusual, by holding as follows:

> Under our State's system of criminal justice, the prosecutor always has been allowed broad discretion in representing the people of the State in determining what crimes to prosecute and in requesting the imposition of various sentences. We reject the argument that the legislature's continued placement of such discretion on the prosecutor to determine which cases warrant the request for the imposition of the death penalty renders the penalty unconstitutional. *Coleman v. State* (1990), Ind., 558 N.E.2d 1059, 1065, *cert. denied* (1991), 501 U.S. 1259, 111 S. Ct. 2912, 115 L.Ed.2d 1075; *Games* [*v. State*], 535 N.E.2d [530, 537 (Ind. 1989), *cert. denied*, 493 U.S. 874, 110 S. Ct. 205 (1989), *reh'g denied*]. There is nothing in this record which leads us to believe

that the prosecutor abused his discretion in seeking the death penalty for a triple murder.

*Id.* at 218. In an opinion concurring in result, Justice DeBruler observed that all three killings were on the same morning within approximately a two hour period and at different locations on the south side of Indianapolis and stated that Ind. Code § 35-50-2-9(b)(8) was applicable in cases involving double or multiple murders for which the defendant is tried in a single proceeding. *Id.*

[50] We cannot say that *McCormick* or *Conner* require reversal or that the aggravator pursuant to Ind. Code § 35-50-2-9(b)(8) constituted an illusory threat. *See Judy v. State*, 275 Ind. 145, 171, 416 N.E.2d 95, 109 (1981) ("As the jury here considered the sentence to be imposed on Judy for each of the four murders, they had before them their own finding of guilt beyond a reasonable doubt of the other three murders involved in the entire incident. Therefore, they could properly consider these convictions as aggravating circumstances in deciding to recommend the death penalty."). Accordingly, we cannot say that Milligan has demonstrated that he was prejudiced or that his plea was involuntary.

## *Conclusion*

[51] For the foregoing reasons, we affirm the denial of Milligan's successive petition for post-conviction relief. Affirmed.

Vaidik, C.J., concurs.

Robb, J., concurs in result with separate opinion.

| | |
|---|---|
| Sam Milligan, | October 13, 2016 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 02A04-1602-PC-263 |
| v. | Appeal from the Allen Superior Court |
| State of Indiana, | The Honorable John F. Surbeck, Jr., Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 02D04-8509-CF-393 |

**Robb, Judge, concurring in result.**

[52] I concur with the majority that the post-conviction court did not err in denying Milligan's successive petition for post-conviction relief. I write only to note the following with respect to Milligan's allegation that there was an insufficient

factual basis for his plea: on this record, we have no reason to disbelieve the post-conviction court's finding that *res judicata* precluded consideration of this issue and even if we did, Milligan has waived the issue.

[53] As the majority notes, the record does not include Milligan's first petition for post-conviction or the order denying that petition. However, the State's answer to Milligan's successive petition for post-conviction relief alleges any issue regarding the factual basis for his plea has "been decided against [him] in the original post-conviction proceeding and may not be relitigated in a successive post-conviction proceeding according to the doctrine of res judicata." Appellant's Appendix at 73. The successive post-conviction court ordered the case submitted by affidavit; in response to Milligan's affidavit, the State alleges the factual basis issue "was decided against Mr. Milligan in his first post-conviction proceeding," citing paragraph 2 of the post-conviction court's June 12, 1996, conclusions of law. *Id.* at 93. Although Milligan alleges in his reply brief that the State has failed to show evidence that he presented the same issue in his prior petition, *see* Reply Brief of Appellant at 3, *he* did not include a copy of the prior petition or order in his appendix, and he does not actually refute that he raised the factual basis issue therein.

[54] On this record, I would say Milligan, who bears the burden of establishing grounds for relief, has not shown any error in the post-conviction court's finding that consideration of the factual basis issue was precluded by *res judicata*. Further, presuming the initial post-conviction decision decided the factual basis issue against Milligan, he has not shown that the initial post-conviction decision

was manifestly unjust in order to avoid *res judicata* when seeking successive post-conviction relief. *See Annes v. State*, 789 N.E.2d 953, 954 (Ind. 2003). And finally, regardless of whether or not Milligan raised the factual basis issue in his first petition for post-conviction relief, he *could* have raised it in his first petition, and has therefore waived its consideration as a standalone claim (as opposed to an ineffective assistance of counsel claim) in a successive petition. *See* P-C.R. 1(8); *Kirk v. State*, 632 N.E.2d 776, 779 (Ind. Ct. App. 1994) (noting the "established rule that a petitioner raise all available grounds for relief in his original petition unless they were not available or were unknown to him at that time").