

FILED

May 16 2023, 10:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander E. Budzenski
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jesse R. Drum
Assistant Section Chief, Criminal
Appeals
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Porfirio Marin,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 16, 2023

Court of Appeals Case No.
22A-PC-3006

Appeal from the Marion Superior
Court

The Honorable Matthew E.
Symons, Magistrate

Trial Court Cause No.
49D29-2001-PC-3926

**Opinion by Judge Bradford**
Judges May and Mathias concur.

**Bradford, Judge.**

# Case Summary

[1] In October of 2004, Porfiro Marin pled guilty to Class D felony attempted sexual misconduct with a minor. Fifteen years later, Marin filed a petition for post-conviction relief ("PCR"), in which he alleged that the factual basis that had been entered in connection to his guilty plea was insufficient to support his conviction and that his trial counsel had provided him with ineffective assistance. Following a hearing, the post-conviction court denied Marin's PCR petition. We affirm.

# Facts and Procedural History

[2] Marin was born in Mexico on September 15, 1984. Marin has resided in the United States since he was four years old and has resided in Indianapolis since 1999. Marin received his permanent-resident status on or about November 28, 2003.

[3] On April 7, 2004, the State charged Marin with one count of Class B felony child molestation, alleging that "on or about April 1, 2004, [Marin] did perform or submit to sexual intercourse with [S.D.], and [S.D.] was a child who was then under the age of fourteen (14) years, that is thirteen (13) years of age[.]"[1] Ex. Vol. p. 56. Six months later, on October 7, 2004, the State and Marin entered into a plea agreement, under the terms of which the State would dismiss

---

[1] S.D. was born on August 17, 1990.

the Class B felony charge and Marin would plead guilty to Class D felony attempted sexual misconduct with a minor. The plea agreement left sentencing to the trial court but capped the executed portion of Marin's sentence at 364 days.

[4] On November 5, 2004, the trial court conducted a guilty-plea hearing at which the following exchange occurred:

> THE COURT: … Before I can consider accepting your plea, it's real important that you understand everything that's going on. If you don't understand anything, please interrupt me through your attorney and through the interpreter, and we'll take time to explain it to you.
>
> You are the defendant, Porfirio Marin?
>
> THE INTERPRETER: Yes.
>
> ****
>
> THE COURT: … I'm going to read this to you through the interpreter, what you're offering to plead guilty to: On or about April 1, 2004, in Marion County, [S]tate of Indiana, the following named defendant, Porfirio Marin, who was at the time over the age of 18 years, attempted to commit the crime of sexual misconduct with a minor with another person, to-wit: S.D., who legally to be between the ages of 14 and 16, by submitting her to touching and fondling with the intent of satisfying his own sexual desires.
>
> That, sir, is a Class D felony you're offering to plead guilty to. Do you understand that?
>
> THE INTERPRETER: Yes.

THE COURT:      Do you understand in order for you to be guilty of what you'd like to plead guilty to, the facts I've read to you must be true?  Do you understand?

THE INTERPRETER:    Yes.

THE COURT:      And by pleading guilty, you're admitting true the facts that I just read to you.  Do you understand that?

THE INTERPRETER:    Yes.

Ex. Vol. pp. 13–15.[2]  Marin indicated that he understood that although he had originally been charged with Class B felony child molestation, pursuant to the terms of his plea agreement, he had agreed to plead guilty to Class D felony attempted sexual misconduct with a minor.  Marin further indicated that he was satisfied with the manner in which his attorney had represented him, understood the terms of his plea agreement, and wished to plead guilty.

[5]     The State then offered the following factual basis:

> Were the State to proceed to trial, it would prove beyond a reasonable doubt that on or about April 1, 2004, in Marion County, [S]tate of Indiana, at the Days Inn Motel on South Keystone, the defendant, Porfirio Marin, did engage in sexual contact with S.D., whom at the time he believed to have been between the ages of 14 and 16 years old, by engaging in sexual contact, which included touching and fondling, with the intent of

---

[2]  The trial court also confirmed that Marin understood that by pleading guilty, he would waive the following rights:  the right to a public and speedy trial, the right to confront and cross-examine the witnesses against him, the right to have compulsory process for obtaining witnesses in his favor, the right to require the State to prove his guilty beyond a reasonable doubt, the right to remain silent, the right to present evidence on his behalf, and the right to appeal his conviction.

satisfying his own sexual desires.

Further, Your Honor, the State would prove that Mr. Marin, the defendant, was over the age of 18 at the time of this offense.

The State would also present testimony that Mr. Marin did confess to Detective John Arvin of the Indianapolis Police Department that he did engage in sexual contact with S.D.[,] all of which is contrary to the stated laws of Indiana.

Ex. Vol. pp. 21–22. The following exchange then took place between Marin and the trial court:

THE COURT:      Did you hear the factual basis as read by the prosecutor?

THE INTERPRETER:    Yes.

THE COURT:      Are those facts correct?

THE INTERPRETER:    Yes.

THE COURT:      Having heard the factual basis, do you still wish to enter into a guilty plea?

THE INTERPRETER:    Yes.

THE COURT:      Do you have any questions regarding your rights or any other matters?

THE DEFENDANT:      No.

THE COURT:      Well, I'm going to make a finding there is a factual basis to accept your guilty plea to the amended information, Attempted Sexual Misconduct with a Minor, Class

D felony, enter judgment of conviction, and accept the plea agreement made between Mr. Marin and [ ]the State.

Ex. Vol. pp. 22–23.

[6] After accepting Marin's guilty plea, the trial court conducted a sentencing hearing, during which Marin apologized and indicated that he understood that he had "used poor judgment." Ex. Vol. p. 25. Marin's counsel argued that Marin was a good candidate for probation and requested that the trial court sentence him to 364 days of probation. Marin's counsel further argued that "the lesson has been learned … has been captured pretty well by my client that this was a very stupid act, very young, foolish, immature and … just irresponsible poor judgment on his part that he will not repeat again[.]" Ex. Vol. pp. 28–29. In response, the State argued that

> [T]his is a situation where there … are two people. The victim in this case, S.D., is under the age of 14. It was defendant's belief at the time, according to the plea, that she was between the ages of 14 and 16.
>
> So at the very least what this Court is aware of is that the defendant did engage in a course of conduct that he sought with someone he thought was between the age of 16 and 14 at a time when he was … over 18. And it's the State's concern with this, Your Honor, that … this be very clearly shown to the defendant as being the wrong course of conduct.
>
> And the State does have concerns that the period of 364 days on sex offender probation, or on probation of any kind, will not be sufficient to clarify for the defendant how egregious his action was. We would ask that the maximum be imposed in this case

and that 364 days be executed.

… I don't think the 364 days probation is going to give [Marin] sufficient time to change in accordance to what's necessary for him not to commit this in the future.

And I don't think there is any … indication on his history that this is a pattern, this is recurring. But I don't think that's necessary to show at this point given the situation, Your Honor.

Ex. Vol. pp. 34–36. The trial court sentenced Marin "to a year on Community Corrections."[3] Ex. Vol. p. 37.

[7] More than a decade later, during the COVID-19 pandemic, Marin traveled to Mexico for his grandmother's funeral. On his return to the United States, Marin was detained by federal immigration authorities. Marin claims that he was told "to clear [his] case" in order to "get [his] green card back." PCR Tr. p. 8.

[8] Thereafter, on January 28, 2020, Marin filed a PCR petition, in which he alleged that the factual basis entered during the guilty-plea hearing had been insufficient to support his conviction and that his trial counsel had provided him with ineffective assistance. The post-conviction court conducted an evidentiary hearing on January 18, 2022, at which both Marin and his trial

---

[3] The abstract of judgment was subsequently amended to reflect that the executed portion of Marin's sentence was 364 days rather than a year.

counsel testified. On November 17, 2022, the post-conviction court denied Marin's PCR petition.

# Discussion and Decision

[9] "Post-conviction procedures do not afford the petitioner with a super-appeal." *Williams v. State*, 706 N.E.2d 149, 153 (Ind. 1999). "Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules." *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Collier v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

[10] Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "In other words, the defendant must convince this Court that there is *no* way within the law that the court below could have reached the decision it did." *Id.* (emphasis in original). "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its

decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. "The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004).

## I.   Sufficient Factual Basis

[11] At all times relevant to the instant matter, Indiana Code section 35-35-1-3(b) has provided that an Indiana court cannot accept a guilty plea unless it is satisfied that there is an adequate factual basis for the plea.

> The purpose of the factual basis requirement is to ensure that a person who pleads guilty is truly guilty. *Butler v. State*, 658 N.E.2d 72[, 76] (Ind. 1995). As the ABA standards put it, the court should satisfy itself that "the defendant could be convicted if he or she elected to stand trial." ABA Standards for Criminal Justice Pleas of Guilty 65 (3d. ed. 1999). "[A] factual basis exists when there is evidence about the elements of the crime from which a court could conclude that the defendant is guilty." *Butler*, 658 N.E.2d at 77. The presentation about facts need not prove guilt beyond a reasonable doubt. *Id.* The original trial court's determination that the factual basis was adequate is clothed with the presumption of correctness. *See id.* We will only set aside the trial court's acceptance of a guilty plea for an abuse of discretion. *Id.*

*State v. Cooper*, 935 N.E.2d 146, 150 (Ind. 2010). "In light of those declared purposes for the factual basis requirements, claims about omissions in the factual basis have been unavailing when the omissions do not seem to demonstrate doubt about actual guilt." *Id.* "[R]elatively minimal evidence has

sometimes been held adequate" to establish a factual basis. *Butler*, 658 N.E.2d at 77. Moreover, "prejudice must be established before post-conviction relief can be granted on grounds of failure to establish a factual basis for a guilty plea." *State v. J.E.*, 723 N.E.2d 863, 864 (Ind. 2000).

[12] Marin pled guilty to Class D felony attempted sexual misconduct with a minor. At the time of his guilty plea, the State was required to prove that Marin was at least eighteen years of age and that "with a child at least fourteen (14) years of age but less than sixteen (16) years of age," he attempted[4] to perform or submit to "any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person." Ind. Code § 35-42-4-9(b) (2003).

[13] Again, during the guilty-plea hearing, the State offered the following factual basis for Marin's guilty plea:

> Were the State to proceed to trial, it would prove beyond a reasonable doubt that on or about April 1, 2004, in Marion County, [S]tate of Indiana, at the Days Inn Motel on South Keystone, the defendant, Porfirio Marin, did engage in sexual contact with S.D., whom at the time he believed to have been between the ages of 14 and 16 years old, by engaging in sexual contact, which included touching and fondling, with the intent of satisfying his own sexual desires.

---

[4] "A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a) (2003). "An attempt to commit a crime is a felony … of the same class as the crime attempted." Ind. Code § 35-41-5-1(a) (2003).

> Further, Your Honor, the State would prove that Mr. Marin, the defendant, was over the age of 18 at the time of this offense.
>
> The State would also present testimony that Mr. Marin did confess to Detective John Arvin of the Indianapolis Police Department that he did engage in sexual contact with S.D.[,] all of which is contrary to the stated laws of Indiana.

Ex. Vol. pp. 21–22. Marin stated during the guilty-plea hearing that he agreed with the factual basis and wished to plead guilty. Marin also stated that he understood that in order to plead guilty, the facts contained in the factual basis must be true. Marin did not challenge the sufficiency of the factual basis at the time he entered his guilty plea.

[14] Marin now contends that the factual basis was inadequate because its wording included both criminal and non-criminal behavior, *i.e.*, attempted sexual intercourse with a child under the age of sixteen and attempted sexual intercourse with a sixteen-year-old. The State concedes that it was error to use language in establishing the factual basis that included the age of sixteen but asserts that Marin has "failed to prove that he was prejudiced by the error" as the record clearly established that he was alleged to have engaged in sexual conduct with a child under the age of sixteen. Appellee's Br. p. 12. We agree with the State.

[15] In an apparent effort to limit his potential criminal exposure, Marin agreed to plead guilty to Class D felony attempted sexual misconduct with a minor in exchange for dismissal of the Class B felony charge. In negotiating a guilty

plea, "[e]ach party bargains to include or exclude certain terms and each party receives substantial benefits by arriving at an agreement." *Bethea v. State*, 983 N.E.2d 1134, 1144 (Ind. 2013) (citing *Wright v. State*, 700 N.E.2d 1153, 1155 (Ind. Ct. App. 1998)). "[A] plea agreement is a contract, 'an explicit agreement between the State and defendant,' which, if accepted by the trial court, is binding upon all parties." *Id.* (quoting *Griffin v. State*, 756 N.E.2d 572, 574 (Ind. Ct. App. 2001), *trans. denied*). The parties negotiated the terms of their agreement, and each received substantial benefits. Through the parties' plea negotiations, Marin lessened his criminal exposure from a Class B felony to a Class D felony and capped the executed portion of his sentence at 364 days. After the trial court accepted the plea agreement, it entered judgment of conviction against Marin for a Class D felony and sentenced him in accordance with the terms of the parties' agreement. Marin, therefore, received the benefit of his bargain.

[16] We note that Class D felony sexual misconduct with a minor involves victims of a different age range than Class B felony child molesting and is therefore not actually a lesser-included offense of Class B felony child molesting. However, the parties seem to have treated it as such, allowing Marin the opportunity to plead guilty to a lower-level offense. We thereby find this case to be comparable to *State v. Sanders*, 596 N.E.2d 225 (Ind. 1992), a case in which a defendant pled guilty to a lesser-included offense for which he was never actually charged in exchange for dismissal of a more serious criminal charge. In *Sander*s, the Indiana Supreme Court considered whether Sanders's guilty plea

to involuntary manslaughter was supported by the record. Sanders had been charged with murder after he had shot and killed Indianapolis police officer Matthew Faber. *Sanders*, 596 N.E.2d at 225. Prior to trial, "Sanders pled guilty to involuntary manslaughter in exchange for the State's dismissal of all other charges." *Id.* Sanders "was never formally charged with involuntary manslaughter, but pled guilty to involuntary manslaughter as a lesser-included offense of murder." *Id.* at 225–26. The trial court accepted Sanders's guilty plea and sentenced him "to a term of seven years imprisonment." *Id.* at 226.

[17] Sanders subsequently sought PCR, with his counsel arguing that his "guilty plea should be set aside because at the time of the guilty plea hearing there was no charging document (either information or indictment) that charged Sanders with involuntary manslaughter." *Id.* "Sanders['s] legal premise was that, as a matter of law, a defendant cannot knowingly enter into a guilty plea to the charge of involuntary manslaughter unless there is an information or indictment charging him with the crime of involuntary manslaughter." *Id.* The post-conviction court granted Sanders relief and this court affirmed. On transfer, however, the Indiana Supreme Court concluded that because Sanders was pleading guilty to a lesser-included offense of the crime of murder, "no separate information or indictment was necessary in order to put Sanders on notice of the charges." *Id.* at 227. In reaching this conclusion, the Court found that it was clear from the record that Sanders was aware of the elements of the offense to which he pled guilty. *Id.* at 228.

[18] Similarly, in this case, despite the error in the wording used by the State in establishing the factual basis, we believe that Marin had adequately been made aware of the elements of the offense to which he pled guilty. Marin indicated at the guilty-plea hearing that he understood that he had originally been charged with Class B felony child molestation under Indiana Code 35-42-4-3 which, at the time Marin was charged, provided that "[a] person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony." The probable cause affidavit that was filed in conjunction with the original charging information clearly stated that S.D., who was born on August 17, 1990, was thirteen years old on the date in question. Thus, before plea negotiations had even commenced, Marin had been put on notice that the State was alleging that he had committed sexual acts with a child who was under the age of sixteen. As such, even though the State erred by using language in establishing the factual basis that included the age of sixteen, we cannot say that Marin was prejudiced by this error because he knew, or at the very least should have known, that the State had alleged that his criminal acts involved a child under the age of sixteen.

[19] Furthermore, while Marin correctly states that at the time he pled guilty to Class D felony attempted sexual misconduct with a minor, Indiana Code section 35-42-4-9(c) provided that "[i]t is a defense that the accused person reasonably believed that the child was at least sixteen (16) years of age at the time of the conduct," we conclude that by pleading guilty, Marin waived his right to raise this affirmative defense. It is well-established that "[d]efendants

who bargain to plead guilty in return for favorable outcomes give up a plethora of substantive claims and procedural rights." *Hawkins v. State*, 990 N.E.2d 508, 509 (Ind. Ct. App. 2013), *trans. denied*. For instance, when a defendant pleads guilty, he waives the right to challenge his conviction on double jeopardy grounds. *See Mapp v. State*, 770 N.E.2d 332, 334 (Ind. 2002) (providing that a defendant "waived his right to challenge is convictions on double jeopardy grounds when he entered his plea agreement" and "there is no exception to this rule for 'facially duplicative' charges"); *Games v. State*, 743 N.E.2d 1132, 1135 (Ind. 2001) (providing that a defendant "who enters a plea agreement to achieve an advantageous position must keep the bargain" and "[o]nce the defendant bargains for a reduced charge, he cannot then challenge the sentence on double jeopardy grounds"). Likewise, "[w]hen a defendant pleads guilty and agrees to a specific sentence, he waives his right to challenge the propriety of his sentence." *Creech v. State*, 887 N.E.2d 73, 75 (Ind. 2008).

[20] Again, the record indicates that from the beginning of the criminal proceedings, Marin knew or should have known that the State was alleging that S.D. was thirteen years old when he engaged in sexual acts with her. At no point prior to pleading guilty did Marin raise the affirmative defense that he believed that S.D. had been sixteen and, when questioned by the trial court, Marin indicated that he understood the charges against him and wished to plead guilty. By pleading guilty, Marin waived the right to challenge his conviction on the ground that he had reasonably believed that S.D. had been sixteen years old on the date in question.

## II. Ineffective Assistance of Counsel

"The right to effective counsel is rooted in the Sixth Amendment to the United States Constitution." *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland*, 466 U.S. at 686).

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* (internal quotation omitted). "We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client," and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Id.*

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. A petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (emphasis added, internal quotation omitted). A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154. Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

Marin contends that his trial counsel provided deficient performance and that he was prejudiced by counsel's deficient performance. As it relates to allegedly deficient performance, the Indiana Supreme Court has held that "under [*Padilla v. Kentucky*, 559 U.S. 356 (2010)], if counsel knows a client is a non-citizen, then counsel must inform the client whether the plea carries a risk of deportation." *Bobadilla v. State*, 117 N.E.3d 1272, 1282 (Ind. 2019) (cleaned up).

Marin was represented at trial by the Honorable Jose Salinas, when Judge Salinas was a practicing attorney specializing in immigration and criminal law, with over ninety percent of his clients being Hispanic. Marin testified during the post-conviction hearing that he had never been advised that his guilty plea could result in deportation and that he did not learn of the immigration

consequences until he had re-entered the United States after attending his grandmother's funeral in Mexico. As it related to Marin, Judge Salinas stated that

> I do not recall independently giving any advisements to this particular client. But I will say that it was my practice, because I did immigration -- that it was my routine to always inquire (1) as to the immigration status of my clients, (2) as to whether or not they wanted -- what was their priority.… Was their … priority to stay out of jail, or you know, try to fight for whatever immigration benefits they may have at the time or may have in the future.

PCR Tr. pp. 4–5. Judge Salinas further stated that it would have been his routine practice to advise non-citizen clients of potential immigration repercussions following a criminal conviction.

[26] The post-conviction court found that Judge Salinas provided Marin with adequate performance, noting that Marin's assertion "that he was not advised of the immigration consequences by Judge Salinas is admittedly self-serving" and "comes after immigration proceedings being initiated against [him] based solely on this conviction." Appellant's App. Vol. III p. 141. The post-conviction court weighed the evidence and found Judge Salinas's testimony regarding his routine with clients facing immigration issues to be more credible than Marin's testimony. Again, when appealing from the denial of a PCR petition, a petitioner must convince us that the evidence, taken as a whole, "leads unerringly and unmistakably to a decision opposite that reached by the

post-conviction court." *Stevens*, 770 N.E.2d at 745. Marin has failed to meet this heavy burden.

[27] Furthermore, even if Marin had established deficient performance, he has failed to convince us that he was prejudiced by Judge Salinas's representation.

> In the context of a guilty plea, the prejudice prong of the *Strickland* test focuses on whether counsel's deficient performance affected the outcome of the plea process. To satisfy the prejudice requirement, the petitioner therefore must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. To prove they would have rejected the guilty plea and insisted on trial, defendants must show some special circumstances that would have supported that decision. Defendants cannot simply say they would have gone to trial, they must establish rational reasons supporting why they would have made that decision.

*Jones v. State*, 151 N.E.3d 790, 797 (Ind. Ct. App. 2020) (cleaned up), *trans. denied*.

[28] The record reveals that by pleading guilty to a Class D felony rather than having potentially been found guilty of a Class B felony, Marin received a substantial benefit, effectively reducing his potential period of incarceration from twenty years to 364 days. In attempting to show prejudice, Marin indicated that he did not "really know much of Mexico" and had never wanted to live in Mexico. PCR Tr. p. 18. When asked "why do you think we should believe you that you would've gone to trial with that risk … instead of taking

the agreement," Marin responded "[b]ecause I got all my family here. I've … been here the rest of my life. So I … would've fought my case." PCR Tr. p. 18.

[29] Given the substantial benefit Marin received, coupled with the fact that he had made a recorded confession to investigating officers, the post-conviction court did not find Marin's claim that he would not have pled guilty but rather would have fought the Class B felony charge to be credible. The post-conviction court found, and we agree, that Marin has failed to "show special circumstances" supporting his decision or "establish rational reasons supporting why [he] would have made that decision." *Jones*, 151 N.E.3d at 797. Marin has therefore again failed to meet the heavy burden of convincing us that the evidence, taken as a whole, "leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745.

[30] The judgment of the post-conviction court is affirmed.

May, J., and Mathias, J., concur.